No. 120,824

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

GIANNI MASSIMO DAINO,
*Appellee*.

SYLLABUS BY THE COURT

1.

The failure to cross-appeal from an adverse decision by the district court generally bars the prevailing party from challenging the lower court's ruling on that issue.

2.

Section 15 of the Kansas Constitution Bill of Rights provides the same protection from unlawful government searches and seizures as does the Fourth Amendment to the United States Constitution.

3.

The State has the burden to prove by a preponderance of the evidence that a defendant's consent to search is valid.

4.

The standard for measuring the scope of a person's consent under the Fourth Amendment is that of objective reasonableness—what would a reasonable person have understood by the exchange between the officer and the person.

1

5.

Mere acquiescence to a claim of lawful authority is inadequate to show voluntary consent.

6.

A defendant may validly consent for officers to enter his or her apartment by responding nonverbally to the officers' request to enter by acts that are specific and unequivocal, such as by opening the door widely, stepping back, and making a sweeping gesture with his or her hand.

7.

Consent must be specific and unequivocal, but it need not be verbal. Consent may instead be granted through gestures or other indications of agreement, so long as they are comprehensible enough to a reasonable officer.

Appeal from Johnson District Court; THOMAS M. SUTHERLAND, judge. Opinion filed January 10, 2020. Reversed and remanded.

*Kendall Kaut* and *Jacob M. Gontesky*, assistant district attorneys, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellant.

*Senanem D. Gizaw*, of Johnson County Public Defender's Office, for appellee.

Before GARDNER, P.J., BUSER, J., and LAHEY, S.J.

GARDNER, J.: This is the State's interlocutory appeal from the district court's suppression of evidence taken from Gianni Massimo Daino's apartment. The district court found that Daino's actions, in response to the officer's request to enter his apartment, would be found by a reasonable person to indicate his consent for the officers to enter. Yet the district court felt compelled by Kansas law to hold that Daino's acts were

2

implied consent, which is not valid. We find that Daino's acts, whether labeled as express consent or implied consent, gave valid consent for officers to enter his apartment.

## FACTUAL AND PROCEDURAL BACKGROUND

The facts, as established at the suppression hearing, are not disputed. Olathe police officers were sent to investigate a narcotics odor in an apartment complex. Officers Robert McKeirnan and Kelly Smith responded in uniform and spoke with a male who told them that someone in unit 48 was partying and he could smell marijuana. Before the officers approached that unit, they could smell marijuana but could not tell where the smell was coming from. When the officers arrived at the door of unit 48, they knocked on the door but did not announce themselves. After about a minute, Daino, who was 18, answered the door and opened it 8-10 inches, enough to reveal a part of his body. The officers then noticed an overwhelming odor of fresh marijuana coming from inside Daino's apartment and that there had been a lot of smoking as well.

McKeirnan told Daino that he knew there was a lot of marijuana in the apartment because he could smell it, then said: "Well, here's the deal, not a huge deal, but I've got to write a ticket if there's marijuana in the house, Okay? Because it is illegal, so let me step in with you real quick and we will get it figured out, okay?" McKeirnan testified that Daino then "nodded and just said, 'Okay. Let's do this.' And then at that point he opened the door for me and invited me in." Daino had at first blocked McKeirnan's sight into his apartment, but after McKeirnan requested to enter, Daino "opened up the door completely and stood out of the way so that we could enter." McKeirnan said Daino opened the door about as far as it could go in the apartment.

McKeirnan then clarified that he did not recall Daino making any verbal response.

3

> "[THE STATE:] Did the defendant specifically tell you, you could come into the apartment verbally?
>
> "[MCKEIRNAN:] Verbally, he did not say, yes, sir, please come in.
>
> "[THE STATE:] Did he say anything out loud to you?
>
> "[MCKEIRNAN:] Not that I—not that I recall from that day. At that point, he just opened up the door and allowed us into the apartment."

McKeirnan "absolutely" believed Daino was consenting to let him enter his apartment.

At counsel's request, McKeirnan stood up and replicated with the swinging door near the witness stand the actions Daino had taken at his door. The district court later detailed McKeirnan's demonstration this way:

> "I don't know how to accurately portray this on the record, but when the officer demonstrated what the defendant did in this case, any reasonable person that exists in the United States would have construed his gesture as 'come on in the apartment.'
>
> "He opened the door up, and he took his right hand and swung it across his body, and pointed into the apartment. No reasonable person could have construed that as don't come in, or I'm not sure if I want you to come in, or I'm still trying to decide whether I want you to come in. Any reasonable person would have construed that as come on in the apartment.
>
> . . . .
>
> ". . . I think the officer candidly admitted it, and I appreciated that, that it was nonverbal. It was a gesture."

Smith testified that McKeirnan knocked, Daino answered the door, McKeirnan asked to enter, and Daino opened the door wider and stepped back to let them inside. He believed Daino's acts meant that he was consenting to let them enter his apartment. Daino did nothing then or later to suggest he was somehow withdrawing his consent or limiting it, except for asking them on the "written consent to search" form not to search his roommate's bedroom.

4

The district court also heard an audio recording of the encounter. In that recording, McKeirnan asks, "Let me step in with you real quick and we'll get it figured out, okay?" A voice softly responds "[O]kay." Yet neither party argues on appeal that Daino verbally consented, and neither officer testified about the "okay" or its source at the suppression hearing. We thus disregard it, as do the parties.

Once inside the apartment, McKeirnan asked Daino where he kept his marijuana. Daino responded that it was in his bedroom. McKeirnan asked whether he could go to the bedroom to get it, and Daino either nodded or said it was okay. McKeirnan told Daino that as long as it was a little marijuana and some paraphernalia, he would write Daino a ticket and give him a court date. Daino responded, "[I]t's a lot of weed." The officers searched Daino's apartment and found these items:

- Black notebook which appeared to be a ledger for drug sales,
- Multiple glass bongs,
- Multiple containers with butane honey oil or "shatter" inside,
- Five 2mg Alprazolam pills,
- 15 Amphetamine/Dextroamphetamine pills,
- Numerous plastic bags of various sizes,
- Digital scale,
- Grinder,
- Paper roller,
- Package of blotter papers,
- $363 in cash,
- Three strips of paper with confirmed LSD,
- 27 grams of marijuana, and
- 2.09 grams of THC.

After seeing the large volume of drugs and paraphernalia in the bedroom, McKeirnan decided not to seize anything and went to his car to get a "consent to search" form. He reviewed that form with Daino, then Daino signed it, permitting the officers to search the apartment except for an absent roommate's bedroom. Officers then searched Daino's bedroom and seized the items. Because Daino had such a large volume of marijuana, McKeirnan decided he could not just issue him a citation as he had anticipated. So he arrested Daino and read him his *Miranda* rights.

The State charged Daino with intent to distribute marijuana in violation of K.S.A. 65-4105(d)(17), possession of an amphetamine in violation of K.S.A. 65-4107(d)(1), and possession of drug paraphernalia in violation of K.S.A. 21-5709(b)(1). Daino moved to suppress all evidence, arguing officers had found it in an illegal search in violation of the Fourth Amendment of the United States Constitution and Section 15 of the Kansas Constitution Bill of Rights.

At the suppression hearing, the parties agreed the legal issues were:

1.  whether officers had valid consent to enter the apartment;
2.  whether the search of the bedroom was valid; and
3.  whether Daino's statements to the officers were admissible.

The district court ruled only on the first of these, mooting the other two.

Daino argued that the officers' entry into his apartment was unlawful because he did not unequivocally, specifically, freely, and intelligently provide consent for them to enter. Daino contended his actions showed mere acquiescence to the officer's request to enter the apartment. On the other hand, the State responded that Daino gave valid nonverbal consent and distinguished nonverbal consent from implied consent.

6

After the evidentiary hearing, the district court granted Daino's motion to suppress, addressing only the first legal issue Daino had raised. The district court found that even though a reasonable officer would have found Daino's actions to be free, specific, and unequivocal consent for the officers to enter the apartment, Kansas law does not allow implied consent. Although the district court did not agree with that law, it applied that law anyway:

> "Then I have to examine what I believe to be clear law stated by our Kansas appellate courts, which is consent may not be implied, the way I read it, under any circumstances, regardless of how clear I might think that the gestures might be.
>
> "And in this case, if I haven't made it clear before, this is different than the defendant just opening the door, opening the door and simply allowing the officers to come in, opening the door and not affirmatively telling them that he doesn't want them to come in—and sometimes I can't help being a little bit of a smart aleck—but I think the universal gesture with his hands of, Come on in.
>
> "And so, were it up to me, I would find that consent was freely and specifically and intelligently given.
>
> "But again, State versus Poulton, I think, is clear that . . . consent may never be implied. And one of the things that I think finally allowed me to land on a decision, one I don't agree with but one I think I have to make, is the fact that the Court of Appeals cited with approval the Blacks Law Dictionary of implied consent as, manifested by signs, actions, or facts, or by inaction or silence, which raise a presumption or inference that the consent has been given.
>
> "Maybe I am just simpleminded but, again, even though I don't agree with it, I read the Kansas case law as saying that no action or gesture can be construed as implied consent.
>
> ". . . In our state courts, consent by [im]plication, at least when it involves homes and DUI blood testing, is not voluntary consent. Kansas state courts want something more.
>
> "Again, if I haven't said it already enough times, I don't agree. I believe if it were up to me that the Defendant did consent knowingly, voluntarily. But I believe that under the current status of Kansas law, it was not consent and, as a result, I must grant the motion to suppress."

The State took an interlocutory appeal. It argues:

- the district court's factual finding that Daino's acts would be construed by a reasonable person as consent to enter is supported by the evidence;
- the district court's legal conclusions that express consent must be verbal and that implied consent is invalid are erroneous;
- Daino expressly provided consent by his acts for officers to enter his residence;
- Daino's consent, even if implied, was valid; and
- Daino's consent was valid under both Section 15 of the Kansas Constitution Bill of Rights and under the Fourth Amendment to the United States Constitution.

The State does not contend on appeal that the officers' smell of marijuana wafting from Daino's apartment provided probable cause and exigent circumstances to search. See *State v. Hubbard*, 309 Kan. 22, 430 P.3d 956 (2018) (finding officers had probable cause to believe contraband or evidence of a crime was in apartment based on smell of raw marijuana odor coming from apartment). The sole issue is consent.

## I.    DAINO'S ARGUMENTS ARE BARRED BY HIS FAILURE TO CROSS-APPEAL

We first address Daino's argument that the district court erred in finding McKeirnan's testimony credible because McKeirnan's testimony contradicted itself. Daino argues that McKeirnan testified that Daino verbally consented to the officers' entry to the apartment and then said that Daino did not verbally consent to their entry. Similarly, Daino contends that McKeirnan testified that Daino verbally consented to the officers' search of his bedroom and then admitted he heard no verbal consent on the audio

8

tape to his request to search Daino's bedroom. But Daino did not file a cross-appeal raising this or any other issue.

The failure to cross-appeal from an adverse decision by the district court generally bars the prevailing party from challenging the lower court's ruling on that issue. See *Lumry v. State*, 305 Kan. 545, 553-54, 385 P.3d 479 (2016); K.S.A. 2018 Supp. 60-2103(h). That rule applies here. So Daino cannot challenge the sufficiency of the evidence or the district court's credibility finding. At any rate, this court cannot reweigh credibility. *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018) (finding appellate courts do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations). We thus consider only the issues appealed by the State.

The sole issue appealed by the State, briefed by the parties, and decided by the trial court is whether the district court erred in holding that Daino's consent for the officers to enter his apartment and investigate was invalid because it was implied. So we do not consider other arguments, such as whether Daino's consent was involuntary because officers exceeded the scope of his consent, or for any other reason. Such arguments have not been raised by either party on appeal, have not been briefed, and are not properly before us to decide. See *State v. Meredith*, 306 Kan. 906, 909, 399 P.3d 859 (2017) (an issue not briefed is waived or abandoned).

II.     THE DISTRICT COURT ERRED BY GRANTING DAINO'S MOTION TO SUPPRESS

A. *The district court's factual findings are supported by substantial competent evidence.*

When we review a district court's motion on a motion to suppress, we first review its factual findings to determine whether they are supported by substantial competent evidence. *State v. Hanke*, 307 Kan. 823, 827, 415 P.3d 966 (2018).

9

The district court's factual findings facts are not disputed on appeal. The officers were the only witnesses at the suppression hearing. Their testimony establishes that they were in uniform, knocked on Daino's door, spoke with Daino when he opened the door a little, and then asked to enter. In response, Daino opened the door widely, stepped back, and made a sweeping gesture with his hand. No evidence to the contrary was offered.

Both officers testified that they understood Daino's acts to mean that Daino was consenting to their entrance into the apartment. As stated earlier, the district court found the officers' testimony credible and we do not revisit that finding. The district court's factual findings are supported by substantial competent evidence.

B. *The district court's legal conclusion is erroneous.*

When, as here, the facts supporting the district court's decision on a motion to suppress are not disputed, the ultimate question of whether to suppress is a question of law over which the appellate court exercises unlimited review. *Hanke*, 307 Kan. at 827. The sole question here is a narrow question of law: Did the district court properly determine, as a matter of law, that consent could not be implied?

*Kansas construes state constitutional provisions in a manner consistent with the Fourth Amendment.*

"Kansas counts among the majority of states which have construed state constitutional provisions in a manner consistent with the United States Supreme Court's interpretation of the Fourth Amendment." *State v. Thompson*, 284 Kan. 763, 779, 166 P.3d 1015 (2007). Section 15 of the Kansas Constitution Bill of Rights provides the same protection from unlawful government searches and seizures as the Fourth Amendment to the United States Constitution. *State v. Daniel*, 291 Kan. 490, 498, 242 P.3d 1186 (2010). The Kansas Supreme Court recently confirmed this approach:

10

"The Fourth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, protects the 'right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.' Section 15 of the Kansas Constitution Bill of Rights provides the same protections. *State v. Ryce*, 303 Kan. 899, 909, 368 P.3d 342 (2016), *aff'd on reh'g* 306 Kan. 682, 396 P.3d 711 (2017); see *State v. Zwickl*, 306 Kan. 286, 291, 393 P.3d 621 (2017) (stating this court could extend Section 15's protections beyond the federal guarantees provided by the Fourth Amendment but has not yet done so)." *State v. Boggess*, 308 Kan. 821, 825-26, 425 P.3d 324 (2018).

Daino shows no reason this court should depart from its long history of coextensive analysis of rights under the two constitutions.

The Fourth Amendment and Section 15 of the Kansas Constitution Bill of Rights protect the public against unlawful government searches and seizures. A government search without a warrant is per se unreasonable unless it falls within one of the exceptions to the warrant requirement. *State v. Neighbors*, 299 Kan. 234, 239, 328 P.3d 1081 (2014). One such exception is consent. A court determines the existence of consent to a search as a question of fact determined from the totality of the circumstances. *State v. Ryce*, 303 Kan. 899, 932, 368 P.3d 342 (2016), *aff'd on reh'g* 306 Kan. 682, 396 P.3d 711 (2017).

*The test for valid consent is objective.*

The State has the burden to prove by a preponderance of the evidence that a defendant's consent to search was valid. *State v. Ruden*, 245 Kan. 95, Syl. ¶ 6, 774 P.2d 972 (1989). To establish valid consent, the State must prove: (1) clear and positive testimony that consent was unequivocal, specific, and freely and intelligently given; and (2) the absence of duress or coercion, express or implied. *State v. Cleverly*, 305 Kan. 598,

11

613, 385 P.3d 512 (2016). Daino does not allege any duress or coercion, so that issue is not before us.

The sole issue briefed by the parties raises a broader question—whether Daino consented to allow the officers to enter his apartment at all. Daino argues only that Kansas law requires express, verbal consent and that implied consent cannot be valid. In contrast, the State argues that Daino's actions, although nonverbal, expressly or impliedly communicated his valid consent for the officers to enter his apartment.

Our task is not to determine what Daino may have subjectively intended. Rather, our task is to determine, from Daino's acts, what a reasonable officer would have objectively understood. "The standard for measuring the scope of a [person's] consent under the Fourth Amendment is that of 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and [the person]?" *Florida v. Jimeno*, 500 U.S. 248, 251, 111 S. Ct. 1801, 114 L. Ed. 2d 297 (1991).

We note, however, that Daino's acts after the officers entered his residence confirm, instead of refute, his intent to consent to their entry. Daino never protested the officers' presence. Instead, he later opened a safe for the officers, agreed officers could search his bedroom, showed officers where the drugs were hidden, then signed a voluntary consent to search form that the officer had reviewed with him. That form states:

- Daino was informed of his constitutional right not to have a search made of the property without a search warrant;
- Daino was informed of his right to refuse to consent to such a search;

12

- Daino authorized McKeirnan to conduct a complete search of his apartment and all rooms, cabinets, and boxes, "excepting Charles Ibarra's room";

- Daino understood that anything of evidentiary value seized in the search can be used as evidence in court;

- The officers are authorized to take from the searched property any items which may be used as evidence in court; and

- "This written consent to search is being granted by me to the above-named officer . . . voluntarily and without threats or promises of any kind."

Daino fully cooperated with the officers throughout the encounter, never protesting their entry or their search. His acts confirm that he intended to agree that officers could enter his apartment to investigate the smell of marijuana. They in no way suggest that Daino thought officers had entered his apartment without his consent.

*Our cases establish that mere acquiescence is inadequate to show consent.*

We begin with the premise that mere acquiescence to a claim of lawful authority is inadequate to show voluntary consent. *State v. Jones*, 279 Kan. 71, 78, 106 P.3d 1 (2005) (finding defendant's mere acquiescence to a preliminary breath test did not establish voluntary consent.); see *State v. Parker*, 282 Kan. 584, 595-96, 147 P.3d 115 (2006) (finding defendant's consent was a submission to authority rather than a voluntary and knowing waiver of his rights when he was illegally detained, surrounded by police officers, witnessed the search and arrest of his friend, and was notified about a possible warrant issued under the false identity he gave police). That law is well established. Yet we find no Kansas Supreme Court cases holding that consent must be verbal to be valid. That is the question here.

13

Our court has applied the "mere acquiescence" rule several times, most notably in *State v. Poulton*, 37 Kan. App. 2d 299, 307-08, 152 P.3d 678 (2007). The district court relied on that case. There, officers arrived at Poulton's home stating they were looking for a person who had violated parole. When the officers said they wanted to go inside to find her, Poulton offered to go inside and get her. When Poulton went inside, the officers followed him into the house through the open door. The district court found that the officers had implied consent to enter the residence because the officers were never told not to enter the house.

The Court of Appeals panel reversed, finding: "The fact that Poulton acquiesced or impliedly consented in the officers' entry does not meet the standard for voluntary consent." 37 Kan. App. 2d at 307. It cited Black's Law Dictionary, which defined implied consent as:

> "'[t]hat manifested by signs, actions, or facts, or by inaction or silence, which raise a presumption or inference that the consent has been given. An inference arising from a course or conduct or relationship between the parties, in which there is mutual acquiescence or a lack of objection under circumstances signifying assent.'" 37 Kan. App. 2d at 307.

The court stated that "[c]onsent by implication . . . is contrary to established law" and held that the facts showed no more than "'acquiescence to a claim of lawful authority.'" 37 Kan. App. 2d at 307-08 (quoting in part *Bumper v. North Carolina*, 391 U.S. 543, 548-49, 88 S. Ct. 1788, 20 L. Ed. 2d 797 [1968]). As a result, the State failed to prove by a preponderance of the evidence that Poulton unequivocally, specifically, freely, and intelligently consented to the officers' entry into his home and did not merely submit to lawful authority.

14

We followed *Poulton* in *State v. Tang*, No. 109,875, 2013 WL 6168664 (Kan. App. 2013). There, under facts quite similar to *Poulton*'s, we found no error in the district court's suppression:

> "[T]he ultimate purpose of [officer] Eichinger's entry is not the critical consideration; the issue is whether Tang validly consented to Eichinger's entry into the home. We agree with the district court that Tang's opening the door, walking into his home, and failing to prevent Eichinger from following him does not show that Tang unequivocally, specifically, freely, and intelligently consented to Eichinger's entry into his home." 2013 WL 6168664, at *5.

Later, in a car stop case, we again applied the rule that "mere acquiescence or submission to a show of lawful authority is inadequate to demonstrate voluntary consent." *State v. Cox*, 51 Kan. App. 2d 596, 601, 352 P.3d 580 (2015). There, Cox moved to suppress all evidence stemming from Officer Peil's search of her bag in Simmons' car. After the officer stopped Simmons and found multiple bags in her car, he called Cox at the community corrections office to confirm that she had left her bags in that car. Cox confirmed it and told the officer that she had left a paper shopping bag from a particular store in the back of Simmons' car and that the bag contained a wood sander. When Peil went to get that bag, he found multiple shopping bags from that same store in the back of the vehicle. He asked Simmons to identify Cox's bag and then removed the bag from the car and opened it to confirm that it contained the wood sander. When the officer opened the bag, he discovered a methamphetamine pipe.

We affirmed suppression, finding no implicit consent to search:

> "Although the facts in *Poulton* differ from Cox's case, the general principles of law governing consent to search are applicable herein. The State's argument that Cox implicitly consented to the search based on the circumstances fails for at least two reasons. First, Simmons specifically identified the Buckle bag that belonged to Cox. Thus, there was no need for Peil to open the bag to look for the wood sander in order to

15

verify ownership of the bag. Second, Peil had the opportunity to ask Cox for her consent to search the bag when he spoke with her on the telephone, but he failed to do so. Under these circumstances, any consent implied by the situation is simply insufficient to substitute for the required express consent. See *Poulton*, 37 Kan. App. 2d at 307." 51 Kan. App. 2d at 602.

The record failed to show that Cox's consent to the search of her bag was unequivocal, specific, and freely given, so the district court properly suppressed the evidence from the bag. But the panel did not find that implied consent could never be sufficient—it found it insufficient under the circumstances to substitute for the required express consent.

A year later, the Kansas Supreme Court indicated that consent may be valid even if it is nonverbal and implied. *Cleverly*, 305 Kan. at 613. There, the Kansas Supreme Court found implied consent to search during a traffic stop based on the defendant's act of handing his cigarette packages to the officer in response to the officer's request to search them. One cigarette package contained methamphetamine. The district court denied Cleverly's motion to suppress, ultimately determining that the search of the cigarette packages was based on valid consent.

On appeal, the Kansas Supreme Court agreed that Cleverly had impliedly consented to the search:

"As discussed above, the lawless conduct of the police in this circumstance was ongoing at the time Cleverly impliedly gave his consent to search the cigarette package by handing it to Officer Humig." 305 Kan. at 613.

True, the Court suppressed the evidence, but for another reason—it found that Cleverly's consent had been tainted by a prior unconstitutional seizure that rendered the consent to search involuntary. It found that the presence of multiple officers, together

16

with other post-traffic stop conduct by one officer would "invoke duress and coercion in a rational citizen." 305 Kan. at 613. It concluded:

> "In short, under the totality of the circumstances of this case, the nature of Cleverly's unlawful seizure rendered his consent to the search of the cigarette package involuntary and, consequently, invalid. The district court erred in refusing to suppress the evidence seized from the cigarette package." 305 Kan. at 614.

Cleverly thus found that defendant's act of handing his cigarettes to the officer, in response to the officer's request to search them, was valid implied consent. But that consent was given under duress, so was involuntary. Daino alleges no duress or coercion.

Recently, in a hotel room search case, another panel of our court applied the rule that "'mere acquiescence or submission to a show of lawful authority is inadequate to demonstrate voluntary consent.'" *State v. Metcalf*, No. 117,802, 2018 WL 5851524, at *8 (Kan. App. 2018) (unpublished opinion). There, officers knocked on the door of Metcalf's hotel room and announced, "'Tribal police, open the door.'" 2018 WL 5851524, at *1. When Rice opened the door, one officer propped the door open with his arm, then leaned into the room and asked if Rice could go get the defendant. Rice, who had been standing in the suite's foyer, then walked toward the suite's living area calling the defendant's name. The officers then entered the suite, uninvited, and followed Rice through the foyer into the living area. The panel properly found suppression was warranted due to lack of consent.

In *Metcalf*, no officer ever asked for consent to enter. And in *Metcalf*, the occupant did not, by his or her actions, yield the right of way to the officers' entry. Although the district court in *Metcalf* relied on the fact that Rice had stepped away from the door in a way that suggested the officers could enter, the panel found that fact unsupported by the record.

17

*Metcalf* carefully distinguished its facts from those in other cases in which officers explicitly ask for consent to enter and the occupant responds by actions clearly yielding the right of way.

"The State cites an 11th Circuit court decision holding that 'yielding the right-of-way' constituted consent for officers to enter the defendant's home. *United States v. Ramirez-Chilel*, 289 F.3d 744, 752 (11th Cir. 2002). *Ramirez-Chilel* differs from the case at hand because there the officers explicitly asked the defendant for consent to enter. They also read and explained an implied consent form once they were in the home. In its decision, the 11th Circuit court differentiated *Ramirez-Chilel* from *United States v. Gonzalez*, 71 F.3d 819, 830 (11th Cir. 1996), wherein the same court held that '"it is inappropriate to 'sanction[ ] entry into the home based upon inferred consent.'"' 289 F.3d at 752.

"In *Gonzalez*, the court held that when police followed the defendant's mother into the home when she went to get a drink of water, the mother's actions were not adequate implied consent to the police's warrantless entry to the house. See *Ramirez-Chilel*, 289 F.3d at 752. In *Ramirez-Chilel*, the 11th Circuit court explicitly compared the two cases and wrote: 'We can certainly make a distinction between the failure to object when officers follow someone into their home and the act of "yielding the right-of-way" to the officers at the person's front door.' 289 F.3d at 752.

"Here, Officers Shobney and Wamego's actions better match those of the police in *Gonzalez*. The bodycam footage shows that the officers followed Rice into the suite after she followed their directive to go search for Metcalf. Furthermore, as discussed earlier, the trial court lacked substantial evidence for its finding that Rice 'stepped away from the door in such a way as to suggest the officers could enter.' The bodycam footage does not show Rice stepping away from the door at all until Officer Shobney told her to go find Metcalf. The account Officer Shobney provided, alleging he watched Rice step away from the door to look for Metcalf, is a factual impossibility and contradicts the bodycam footage.

18

"The record shows that the officers did not ask Rice to allow them into the room; rather, Officer Shobney asked Rice to go look for Metcalf and the officers followed her. This is more analogous to the facts in *Gonzalez*, where the police followed a defendant's mother into the house when she went inside to get water, than it is to the facts in *Ramirez-Chilel*, where police explicitly asked the defendant for permission to enter, and he responded by yielding the right-of-way into the home." *Metcalf*, 2018 WL 5851524, at *8.

Our court has held that a nod of the head in response to an officer's request might be unequivocal and specific consent. *State v. Seeley*, No. 99,456, 2009 WL 500960, at *4-5 (Kan. App. 2009) (unpublished opinion). There, an officer asked Seeley if the officers could search their apartment for any type of illegal narcotics and testified that Seeley then nodded her head in approval. The *Seeley* court upheld the search noting, "[a]rguably, a nod of the head can be unequivocal and specific," citing *United States v. Gordon*, 173 F.3d 761, 766 (10th Cir. 1999), and *United States v. Torres*, 983 F. Supp. 1346, 1354-55 (D. Kan. 1997). 2009 WL 500960, at *4. But in *Seeley*, defendant had also told the officers they could "look around." 2009 WL 500960, at *3-4.

Another panel of this court recently relied on *Seeley* in finding that a wave paired with opening the door wider and stepping back can be unequivocal and specific consent. *City of Topeka v. Murdock*, No. 116,213, 2018 WL 385699 (Kan. App.), *rev. denied* 308 Kan. 1593 (2018) (unpublished opinion). There, the officer told Murdock he wanted to speak with him about personal business and asked if he could step inside to talk. Murdock allowed him to come inside his apartment. The defendant told officers to "come in," then he stepped back into the apartment, pushed the door open wider, and gave a slight wave. The panel found that "[i]f a nod of the head can be unequivocal and specific, so can a wave paired with opening the door wider and stepping backwards." 2018 WL 385699, at *3. The panel agreed with *Seeley*'s finding that "[n]onverbal conduct can also constitute consent to enter an individual's home." 2018 WL 385699, at *3. The *Murdock* court upheld the entry into the defendant's apartment.

19

*The undisputed facts show Daino's unequivocal, specific, free, and intelligent consent.*

We believe our prior appellate cases were correctly decided. But the facts here are distinctively different. Officers explicitly asked Daino for permission to enter, and he responded by yielding the right-of-way into his home. *Poulton* and other cases summarized above are distinguishable from Daino's case in this important respect. They involved an inaction on the defendant's part because the defendant was never asked for consent to enter, the defendant in no way indicated that the officers could enter—instead, the defendant merely failed to object when officers, uninvited, followed the defendant into his residence.

In contrast, Daino affirmatively communicated to the officers his agreement for them to enter his apartment by his acts in direct response to the officer's request to enter. When the officer asked to enter, Daino opened the door widely, stepped back, and made a sweeping gesture with his hand. As the district court found, any reasonable person would have understood from that exchange that Daino agreed the officers could enter. There was no ambiguity about the meaning of his acts. The uncontested facts show that Daino yielded the right of way to the officers by his nonverbal, affirmative communication.

Daino did much more than just acquiesce or submit to a show of lawful authority. The totality of circumstances shows that Daino unequivocally, specifically, freely, and intelligently consented to officers entering his residence to investigate the smell of marijuana. Although silence alone is not consent, *Poulton*, 37 Kan. App. 2d at 307, silence coupled with clear, responsive, and unequivocal actions can be. And nothing in our precedent requires consent to be verbal—it merely requires that consent be clear and unequivocal.

20

*Federal cases uphold implied consent to enter a residence.*

Although Kansas courts have not squarely held that "[c]onsent can be found from an individual's words, acts or conduct," *Krause v. Penny*, 837 F.2d 595, 597 (2d Cir. 1988), our federal counterparts have.

> "For consent to be voluntary, the government must receive either express or implied consent. See *United States v. Jones*, 701 F.3d 1300, 1320-21 (10th Cir. 2012).
>
> "Implied consent to enter a home is no less valid than explicit consent. *See id.* Consent 'must be clear but it need not be verbal. Consent may instead be granted through gestures or other indications of acquiescence, so long as they are sufficiently comprehensible to a reasonable officer.' *United States v. Guerrero*, 472 F.3d 784, 789-90 (10th Cir. 2007). 'The focus is not whether [one] subjectively consented, but rather, whether a reasonable officer would believe consent was given' as 'inferred from words, gestures, or other conduct.' *United States v. Pena-Ponce*, 588 F.3d 579, 584 (8th Cir. 2009)." *United States v. Lopez-Carillo*, 536 Fed. Appx. 762, 767-68 (10th Cir. 2013).

The rule that "consent must be clear, but it need not be verbal," *United States v. Guerrero*, 472 F.3d 784, 789 (2007), makes good sense, as actions may be just as clear and responsive as words.

Daino suggests that the federal circuits do not uphold implied consents for police officers' entries of residences. Although we have not conducted an exhaustive study of that topic, our research shows that federal cases consistently uphold actual consent, whether express or implied, for officers to enter a residence. See, e.g., *United States v. Faler*, 832 F.3d 849 (8th Cir. 2016) (finding implied consent to enter when officer asked to come in and apartment tenant opened the door wider and moved out of the way); *United States v. Sabo*, 724 F.3d 891, 894 (7th Cir. 2013) (finding implied consent when arrestee opened door, stepped back and to the side, allowing police into his trailer); *United States v. Jones*, 701 F.3d 1300, 1321 (10th Cir. 2012) (finding implied consent for

21

officers to enter home because defendant's affirmative acts such as unlocking his backdoor, entering, and gesturing toward the officers, were "not actions that a reasonable officer would have interpreted as signaling Mr. Jones's refusal of the officers' entry into his residence"); *United States v. Carter*, 378 F.3d 584, 588 (6th Cir. 2004) (finding implied consent to enter residence because defendant stepped aside to let police officers inside after they knocked on his hotel room door and asked for permission to enter); *United States v. Ramirez-Chilel*, 289 F.3d 744, 752 (11th Cir. 2002) (finding implied consent to enter trailer because defendant yielded right of way to officers); *United States v. Genao*, 281 F.3d 305, 309-10 (1st Cir. 2002) (finding implied consent to search apartment when defendant volunteered that he had a key to the apartment and showed the police how the key worked); *United States v. Rosi*, 27 F.3d 409, 412 (9th Cir. 1994) (finding implied consent to enter condominium because defendant provided agents with key so they could enter and defendant could change clothes). Those cases show that voluntariness is a question of fact to be determined from all the surrounding circumstances. *Schneckloth v. Bustamonte*, 412 U.S. 218, 227, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973).

The Fourth Amendment to the Constitution of the United States protects only against unreasonable searches and seizures. *State v. Kimberlin*, 26 Kan. App. 2d 28, 35, 977 P.2d 276 (1999) (finding resident's consent given to one officer to enter house to protect her from violence provided backup officer with implied consent to enter house for safety of first officer). The typical reasonable person would have understood by the exchange between the officers and Daino that Daino was consenting to officers entering his apartment. See *Jimeno*, 500 U.S. at 251. The State met its burden to prove by a preponderance of the evidence that Daino's consent was unequivocal, specific, and freely and intelligently given. Daino validly consented to the officers' entry into his apartment. He did not merely acquiesce or submit to a show of lawful authority.

22

We reverse the district court's order of suppression and remand the case for further proceedings.

* * *

BUSER, J., dissenting:  I dissent. Under the totality of circumstances—especially Officer Robert McKeirnan's dissembling statements made to Gianni Daino outside the doorway of his apartment and Daino's silent gesture and demeanor in response to those statements—I would find the State failed to provide clear and positive testimony that consent to enter the apartment to conduct a search and seizure was unequivocal, specific, and freely and intelligently provided. See *State v. Poulton*, 37 Kan. App. 2d 299, 307, 152 P.3d 678 (2007), *aff'd in part and rev'd in part on other grounds* 286 Kan. 1, 179 P.3d 1145 (2008) (affirming the decision of the Court of Appeals to reverse the convictions based on the initial search).

Officer McKeirnan made the following statements to Daino upon the defendant opening the door, "How's it going? Oh wow, yeah, it is here. Okay. You've got a bunch of weed in here, man." The officer then informed Daino, "Well, here's the deal, not a huge deal, but I've got to write a ticket if there's marijuana in the house, Okay? Because it is illegal, so let me step in with you real quick and we will get it figured out, okay?" In response, Daino opened the door, silently gestured, and the officers entered the apartment.

There are three principal reasons I believe that any implied consent by Daino was not unequivocal, specific, and freely and intelligently provided. First, it is readily apparent that Officer McKeirnan did not explicitly or implicitly inform Daino that his request to "step in with you real quick" was to search the premises and seize marijuana or evidence. Without the officer advising Daino of his intended purpose for entering the

23

apartment, any resulting consent—whether explicit or implied—was not knowing and informed.

Second, although it is a preferred practice but not a mandatory requirement, the officer did not inform Daino of his right to refuse the officers' entry into the residence. See *Poulton*, 37 Kan. App. 2d 299, Syl. ¶ 4 ("A court decides the question of voluntariness based on the totality of circumstances, considering whether the individual was threatened or coerced and *whether the individual was informed of his or her rights*."). (Emphasis added.) While Officer McKeirnan possessed a consent to search form that summarized Fourth Amendment search and seizure rights, this important information was not provided to Daino at the doorway. Instead, the consent form was given to Daino for his review and signature several minutes *after* entry into his apartment and *after* two searches of his bedroom already had resulted in the discovery of illegal drugs and contraband. The after-the-fact written consent to search the apartment and seize evidence obviously did not retroactively validate the initial uninformed implied consent to enter the apartment. In summary, I would find Officer McKeirnan's doorway statements were insufficient to provide any basis for Daino to make a knowing and intelligent consent.

Third, as noted by my colleagues:  "'The standard for measuring the scope of a [person's] consent under the Fourth Amendment is that of "objective" reasonableness— what would the typical reasonable person have understood by the exchange between the officer and [the person]?' *Florida v. Jimeno*, 500 U.S. 248, 251, 111 S. Ct. 1801, 114 L. Ed. 2d 297 (1991)." Slip op. at 12. The question is, therefore, presented:  What would a reasonable person understand by the doorway exchange between Officer McKeirnan and Daino?

I submit that not only did Officer McKeirnan's statements at the doorway insufficiently inform Daino of the officer's purpose in seeking entry into the apartment or

24

inform Daino of his constitutional right to refuse entry, Officer McKeirnan's statements were also misleading and would not have conveyed to a reasonable person that the officer was seeking consent to enter the apartment to search for illegal drugs and contraband. Based on Officer McKeirnan's vague statements to Daino about "step[ping] in with you real quick," writing a ticket for marijuana possession because it was "not a huge deal," and getting it "figured out," a reasonable person would not have understood that the officer was seeking entry in order to search the apartment. On the contrary, a reasonable person would understand that the officer's purpose was to enter the apartment to facilitate writing the citation. In this context, I would conclude that Daino was silently acquiescing to Officer McKeirnan's claim of lawful authority to enter the apartment because the officer knew there was marijuana inside, and he was required to issue a citation for this violation of law.

My colleagues acknowledge that acquiescence is not informed consent. Slip op. at 13; see *Bumper v. North Carolina*, 391 U.S. 543, 548-49, 88 S. Ct. 1788, 20 L. Ed. 2d 797 (1968) (State does not meet its burden to prove voluntary consent to search "by showing no more than acquiescence to a claim of lawful authority."); 37 Kan. App. 2d 299, Syl. ¶ 5 ("A defendant's acquiescence or implied consent to an officer's entry into his or her home does not meet the standard for voluntary consent to enter the home."). They dispute, however, that Daino simply acquiesced to Officer McKeirnan's claim of lawful authority in part based on the officer's testimony that the officer "'absolutely' believed Daino was consenting to let him enter his apartment." Slip op. at 4. While true, Officer McKeirnan also candidly testified that he "*assumed* that [Daino] was agreeing with me" to allow entry into the apartment. (Emphasis added.)

I would contend a reasonable person would understand that Daino's silence and gesture in response to Officer McKeirnan's dissembling statements made at the doorway were not his expression of fully informed and freely-given consent to enter the apartment to search and seize incriminating evidence. On the contrary, a reasonable person would

25

understand Daino's nonverbal gesticulation as his act of resignation or acquiescence to being caught smoking marijuana, having an officer inform him that his conduct was illegal, and cooperating with the officer's request to enter the apartment in order to process the citation.

In this regard, Officer McKeirnan provided important testimony that Daino was merely acquiescing to his request at the doorway to "let me step in with you real quick." Daino was only 18 years of age. Officer McKeirnan testified at the preliminary hearing that when he opened the door, Daino "kind of hung his head and had me come in." The officer described Daino as emotionally upset and crying upon the officers' entry into the apartment. According to Officer McKeirnan testifying at the suppression hearing, "It seemed like he was upset that he messed up. He seemed like he was upset at himself." At both the preliminary hearing and hearing on the motion to suppress, Officer McKeirnan characterized Daino's demeanor as "compliant" or "very compliant." Daino's emotional response upon talking with Officer McKeirnan at the doorway, coupled with his quiet, compliant behavior, persuade me that his gesture at the doorway was merely acquiescence to the officer's authority upon being advised that Daino had committed an illegal act and was about to receive a citation inside his apartment.

In conclusion, under the totality of these circumstances, I would find that Daino did not unequivocally, specifically, and freely and intelligently consent to Officer McKeirnan's entry into his apartment. Accordingly, I would affirm the district court's order suppressing the evidence due to the violation of the Fourth Amendment.