[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-10340
Non-Argument Calendar
_____

D.C. Docket No. 0:13-cr-60195-DMM-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

TONY CYRIL FULLER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(July 21, 2014)

Before TJOFLAT, PRYOR and MARTIN, Circuit Judges.

PER CURIAM:

Tony Cyril Fuller appeals his conviction for being a felon in possession of a

firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2).[1] Fuller raises one issue: Whether the District Court erred in denying his motion to suppress a firearm and ammunition Detectives of the Lauderhill, Florida, Police Department obtained during a warrantless search of his backyard and statements he made following his arrest.

Fuller argues that although the detectives were engaged in the "hot pursuit" of a stolen-car suspect, their approximately 12-minute pursuit of the suspect had become "cold" by the time one of the detectives entered his backyard. We find no error in the court's ruling and accordingly affirm.

I.

The circumstances under which the police wound up in Fuller's backyard, as depicted at the hearing on Fuller's motion to suppress, are these. On June 10, 2013, at 1:48 p.m., as Detective LaGrasta, his partner, Detective Session, and another detective of the Lauderhill Police Department were attempting to stop a stolen automobile, the car's three male occupants jumped out while the car was rolling and ran.[2] Two went west, a third east. LaGrasta and Session ran after the two headed west; the third detective remained on the scene, at 3321 NW 6th Court. Detective LaGrasta quickly caught one of the two suspects, the driver of

---

[1] As of the date of his arrest, Fuller had been convicted of multiple felonies—six as a juvenile and four as an adult—and thus was prohibited from possessing a firearm.

[2] After the suspects jumped out of the car, it crashed into a house.

2

the car, in the backyard of a house on NW 6th Street, and handed him over to officers who had arrived at the scene.  LaGrasta then hailed a passing motorist who drove him to the 3300 block of 4th Court, where his lieutenant was after the second suspect who was running through backyards on 4th Court.  At this point, Detective Ramos, who was driving nearby, said in a radio transmission that two suspicious people were in the backyard at 3461 4th Court.  LaGrasta went there. Fuller was living at that address with his girlfriend, Sabrina Hampton.

The lot at 3461 NW 4th Court contains a small house with a lawn in front and on the sides, and a backyard enclosed by a chain-link fence with a gate and, on one side, a neighbor's wooden fence.  The fence gate was open.  Detective LaGrasta ran around the house and looked into the backyard.  He saw Fuller and Hampton in the backyard sitting up against the neighbor's wooden fence.  Fuller eyeballed LaGrasta, who was wearing tactical gear with a police insignia and standing 15 to 20 feet away, and immediately removed a gun from his waistband and dropped it into a trash can he was sitting on.  At that point, LaGrasta, concerned for his safety, entered the backyard, ordered Fuller to the ground, removed a loaded firearm, a .45 caliber Taurus, from the trash can, and placed Fuller in handcuffs.  He searched Fuller and found cocaine powder and a straw with cocaine residue.  Detective Session, who had entered the backyard from the other side of the house, told LaGrasta that Fuller was not the man he was chasing.

3

Fuller was detained at 1:59 pm, just eleven minutes after LaGrasta and Session began their the pursuit of the suspects, and LaGrasta read him his *Miranda* rights.  He waived his rights and responded to LaGrasta's questions.  He admitted owning the firearm; he said he'd purchased it on the street in Ft. Lauderdale for  $250.

II.

We review the District Court's denial of Fuller's motion to suppress as a mixed question of law and fact.  *United States v. Franklin*, 694 F.3d 1, 7 (11th Cir. 2012).  We accept the court's factual findings in resolving an exigent circumstance issue unless the findings are clearly erroneous.  *Id.*  "We determine *de novo* whether the court erred in applying the law to those facts."  *Id.* (quoting *United States v. Bradley*, 644 F.3d 1213, 1261 (11th Cir. 2011)).

The Fourth Amendment protects persons and their "houses, papers, and effects" from "unreasonable searches and seizures."  U.S. Const. amend. IV.  This protection extends to the curtilage of a person's home, which is "part of the home itself for Fourth Amendment purposes."  *See Florida v. Jardines*, __ U.S. __, 133 S. Ct. 1409, 1414, 185 L. Ed. 2d 495 (2013) (quoting *Oliver v. United States*, 466 U.S. 170, 180, 104 S. Ct. 1735, 1742, 80 L. Ed. 2d 214 (1984)); *United States v. Dunn*, 480 U.S. 294, 300, 107 S. Ct. 1134, 1139, 94 L. Ed. 2d 326 (1987).  The Supreme Court has defined the curtilage as the area around the home that harbors those intimate activities associated with domestic life and the privacies of the

4

home. *Dunn*, 480 U.S. at 300, 107 S. Ct. at 1139. Thus, "[w]henever government agents enter into the curtilage they necessarily intrude upon the individual's reasonable expectation of privacy." *United States v. Jackson*, 588 F.2d 1046, 1053 (5th Cir. 1979).

Under the Fourth Amendment, "searches and seizures inside a home without a warrant are presumptively unreasonable." *Franklin*, 694 F.3d at 7 (quoting *Payton v. New York*, 445 U.S. 573, 586, 100 S. Ct. 1371, 1380, 63 L. Ed. 2d 639 (1980)). However, a warrantless search or seizure of a home may be justified "where both probable cause and exigent circumstances exist." *Id.* (quoting *United States v. Tobin*, 923 F.2d 1506, 1510 (11th Cir. 1991)). The government bears the burden of proving an exception to the warrant requirement. *United States v. Holloway*, 290 F.3d 1331, 1337 (11th Cir. 2002). The exigent circumstances doctrine applies only when there is a compelling need for official action, but no time for law enforcement to secure a warrant. *Id.* at 1334. The exigent circumstances doctrine extends to situations involving "danger of flight or escape, loss or destruction of evidence, risk of harm to the public or the police, mobility of a vehicle, and hot pursuit." *Id.*

Under the hot pursuit doctrine, police officers may enter premises without a warrant when they are in hot pursuit of a fleeing suspect. *See United States v. Santana,* 427 U.S. 38, 42–43, 96 S. Ct. 2406, 2409–10, 49 L. Ed. 2d 300 (1976). A

5

"hot pursuit means some sort of chase, but it need not be an extended hue and cry 'in and about [the] public streets.'" *Id.* at 42–43, 96 S. Ct. at 2410.  The Supreme Court has indicated that a claim of hot pursuit is "unconvincing" where there was "no immediate and continuous pursuit of the petitioner from the scene of a crime." *Welsh v. Wisconsin*, 466 U.S. 740, 753, 104 S. Ct. 2091, 2099, 80 L. Ed. 2d 732 (1984).

During the approximately 12 minutes between the suspects' fleeing from the stolen car and Detective LaGrasta's arrival at Fuller's yard, LaGrasta and other detectives were engaged in a single pursuit that was continuous from the time the suspects fled the stolen car to the moment LaGrasta entered Fuller's back yard. *See Welsh*, 466 U.S. at 753, 104 S. Ct. at 2099; *Santana,* 427 U.S. at 42–43, 96 S. Ct. at 2409–10.  Fuller does not challenge LaGrasta's search and detention after he entered the backyard.  What he challenges is whether LaGrasta's entry was justified by exigent circumstances because the "hot pursuit" had grown cold.  We agree with the District Court that pursuit had not grown cold.  LaGrasta was engaged in an uninterrupted pursuit, aided by an ongoing dispatch transmission; hence, his entry was justified.

AFFIRMED.