# IN THE SUPREME COURT, STATE OF WYOMING

# 2021 WY 36

## OCTOBER TERM, A.D. 2020

## February 24, 2021

DILLON WAYNE FULLER,

Appellant
(Defendant),

v.

S-20-0080

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Campbell County*
The Honorable Thomas W. Rumpke, Judge

*Representing Appellant:*

Office of the State Public Defender: Diane Lozano, State Public Defender; Kirk A. Morgan, Chief Appellate Counsel; David E. Westling, Senior Assistant Appellate Counsel. Argument by Mr. Westling.

*Representing Appellee:*

Bridget Hill, Wyoming Attorney General; Jenny L. Craig, Deputy Attorney General; Joshua C. Eames, Senior Assistant Attorney General; Kristen R. Jones, Assistant Attorney General. Argument by Ms. Jones.

*Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**KAUTZ, Justice.**

[¶1]    Law enforcement officers entered Dillon Wayne Fuller's apartment without a warrant to arrest him after he failed to stop for a traffic violation.  Mr. Fuller filed a motion to suppress, arguing the warrantless entry was unconstitutional under the Fourth Amendment to the United States Constitution.  The district court decided the warrantless entry was justified by exigent circumstances—the "hot pursuit" of a fleeing suspect—and denied Mr. Fuller's motion.  Mr. Fuller appeals from that denial.  We reverse and remand.

## ISSUE

[¶2]    Did the district court err in concluding law enforcement's warrantless entry into Mr. Fuller's apartment to arrest him was constitutional under the exigent circumstances exception to the Fourth Amendment's warrant requirement?

## FACTS

[¶3]    At around 3:30 A.M. on March 20, 2019, Campbell County Sheriff's Deputy Ryan Kellison observed a sport-utility vehicle (SUV) with no visible registration traveling through downtown Gillette.  He activated his vehicle's emergency lights and attempted to stop the SUV.  The SUV did not stop, but rather sped up slightly from 35 mph to 40 mph.  After traveling about four blocks, the SUV pulled into a single-story apartment complex.  The driver jumped out of the vehicle, looked at Deputy Kellison, and ran into an apartment.  Before the driver entered the apartment, Deputy Kellison twice told him to stop.

[¶4]    Deputy Kellison called for back-up.  While waiting for back-up to arrive, Deputy Kellison approached the SUV, where he found a female passenger.  The passenger identified herself but claimed not to know the driver's name.  Deputy Kellison ran the passenger's name through dispatch; she did not have any outstanding warrants.  Deputy Kellison waited near the front door of the apartment for back-up.

[¶5]    Back-up officers arrived "a couple of minutes" after Deputy Kellison requested their assistance.  Deputy Kellison walked around the apartment building and discovered the only other potential exit from the apartment was a back window, which was closed.  Officers positioned themselves around the building while Deputy Kellison and other officers "stacked up" to enter the apartment.  After knocking and announcing their presence three times, the officers kicked in the door, which had been blocked by a table.  Once inside the apartment, officers found Mr. Fuller and arrested him.  Mr. Fuller "had slurred speech . . . [and] could not walk or stand without swaying or being helped by [the officers]."  Deputy Kellison smelled "a strong odor of alcoholic beverage coming from [Mr. Fuller's] facial area" and the odor of burnt marijuana coming from his person.  Another officer found marijuana and drug paraphernalia in plain view.  Deputy Kellison subsequently obtained a

1

search warrant for the apartment. The search revealed a vape pen cartridge with suspected THC oil.

[¶6]    Mr. Fuller was charged with felony possession of a controlled substance (Count 1); felony driving while under the influence (Count 2); misdemeanor fleeing or attempting to elude a police officer (Count 3); and misdemeanor interference with a police officer (Count 4). Wyo. Stat. Ann. §§ 6-5-204(a), 31-5-225, 31-5-233(b)(iii)(C), 35-7-1031(c)(i)(A) (LexisNexis 2019). He filed a motion to suppress all evidence found in his apartment, arguing the officers' warrantless entry without his consent violated the Fourth Amendment.[1] The district court held an evidentiary hearing, at which the State stipulated the apartment was Mr. Fuller's home. The district court denied the motion to suppress. It concluded the officers' warrantless entry into Mr. Fuller's home was reasonable because (1) the officers had probable cause to arrest Mr. Fuller for driving without a visible registration and eluding and interfering with a police officer; and (2) exigent circumstances existed—Deputy Kellison was in "hot pursuit" of a fleeing suspect.

[¶7]    Mr. Fuller entered conditional guilty pleas to Counts 1 and 2, reserving the right to appeal from the district court's denial of his suppression motion. The district court sentenced him to prison for 2-4 years on Count 1 and 3-5 years on Count 2 and ordered the sentences to run concurrently. Mr. Fuller timely appealed.

## STANDARD OF REVIEW

[¶8]    When reviewing the denial of a motion to suppress, we view the evidence in the light most favorable to the district court's decision and accept the district court's factual findings unless they are clearly erroneous. *Baker v. State*, 2010 WY 6, ¶ 9, 223 P.3d 542, 547 (Wyo. 2010). "The underlying question of law—whether the search was unreasonable and therefore unconstitutional—is reviewed *de novo*." *Robinson v. State*, 2019 WY 125, ¶ 20, 454 P.3d 149, 156 (Wyo. 2019) (citing *Jennings v. State*, 2016 WY 69, ¶ 8, 375 P.3d 788, 790 (Wyo. 2016)).

## DISCUSSION

[¶9]    The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" U.S. Const. amend. IV. "[S]earches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 586, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639 (1980). *See also, United States v. United States Dist. Court for E. Dist. of Mich., S. Div.*, 407 U.S. 297, 313, 92 S.Ct. 2125, 2134, 32 L.Ed.2d 752 ("[P]hysical

---

[1] Mr. Fuller also argued the warrantless entry was unconstitutional under art. 1, § 4 of the Wyoming Constitution. He does not raise an argument under the Wyoming Constitution in this appeal.

2

entry of the home is the chief evil against which the wording of the Fourth Amendment is directed."). However, warrantless entries into the home to effectuate an arrest are valid under the Fourth Amendment if probable cause and exigent circumstances exist. *Payton*, 445 U.S. at 587-89, 100 S.Ct. at 1381. *See also, Welsh v. Wisconsin*, 466 U.S. 740, 741, 104 S.Ct. 2091, 2093, 80 L.Ed.2d 732 (1984) ("[A]bsent probable cause and exigent circumstances, warrantless arrests in the home are prohibited by the Fourth Amendment."); *Pena v. State*, 2004 WY 115, ¶ 29, 98 P.3d 857, 870 (Wyo. 2004) ("[W]arrantless searches and seizures are per se unreasonable unless they are justified by probable cause and established exceptions.") (citing *Morris v. State*, 908 P.2d 931, 935 (Wyo. 1995)). Mr. Fuller does not dispute Deputy Kellison had probable cause to arrest him for driving without visible registration and eluding a police officer. He disputes only the existence of exigent circumstances.

[¶10] Exigent circumstances exist "when there is compelling need for official action and no time to secure a warrant." *Michigan v. Tyler*, 436 U.S. 499, 509, 98 S.Ct. 1942, 1949, 56 L.Ed.2d 486 (1978) (citations omitted). Such circumstances include the need to (1) provide emergency assistance to a home's occupant; (2) engage in "hot pursuit" of a fleeing suspect; (3) prevent harm to the police or to other persons; (4) avert the imminent destruction of evidence; (5) prevent the suspect's escape; and (6) enter a burning building to put out a fire and investigate its cause. *Birchfield v. North Dakota*, ---- U.S. ----, 136 S.Ct. 2160, 2189, 195 L.Ed.2d 560 (2016) (citing *Missouri v. McNeely*, 569 U.S. 141, 149 , 133 S.Ct. 1552, 1559, 185 L.Ed.2d 696 (2013)); *Minnesota v. Olson*, 495 U.S. 91, 100, 110 S.Ct. 1684, 1690, 109 L.Ed.2d 85 (1990). *See also, Baker*, ¶ 10, 223 P.3d at 547 (recognizing "a search conducted while in hot pursuit of a fleeing suspect" is an exception to the warrant requirement (quoting *Andrews v. State*, 2002 WY 28, ¶ 18, 40 P.3d 708, 712 (Wyo. 2002)). We consider the totality of the circumstances to determine whether exigent circumstances existed. *McNeely*, 569 U.S. at 149, 133 S.Ct. at 1559. *See also, Pena*, ¶ 29, 98 P.3d at 870 ("The existence of exigent circumstances is dependent upon all of the facts or circumstances viewed in their entirety."). The State bears the burden of showing the existence of exigent circumstances. *Pena*, ¶ 29, 98 P.2d at 870.

[¶11] The district court concluded the officers' warrantless entry into Mr. Fuller's apartment was justified by exigent circumstances—the "hot pursuit" of a fleeing suspect (hereinafter referred to as the "hot pursuit" exception). It explained:

> [U]nder the totality of the circumstances, [Deputy] Kellison's entry into [Mr. Fuller]'s home to effectuate an arrest was reasonable. Not only were the offenses at issue [(no visible registration and eluding the police)] jailable offenses, [Mr. Fuller] repeatedly and quickly escalated his criminal behavior. In a matter of minutes, [Mr. Fuller] went from not having a properly displayed vehicle registration to trying to elude the police in a vehicle to running away from a deputy

3

sheriff as he attempted to make an arrest. Under these facts, the 'hot pursuit' doctrine applies and prohibits rewarding [Mr. Fuller] for escalating his criminal behavior and avoids penalizing law enforcement for apprehending a suspect who by his own actions drew law enforcement into his home.

[] Moreover, [Deputy] Kellison knew almost nothing about the suspect in this case except that he was willing to continue to escalate his criminal behavior at 3:30 a.m. [Deputy] Kellison testified that he did not recognize [Mr. Fuller] from any earlier contacts. Moreover, [Deputy] Kellison was unable to run the registration on the [SUV] to determine who the owner might be. Finally, the female occupant of the [SUV] refused to tell [Deputy] Kellison who had been driving the vehicle. Under these circumstances, the hot pursuit doctrine provided a 'rare' exception to the warrant requirement. *See State v. Ramirez*, 814 P.2d 1131 (Utah. Ct. App. 1991).

[¶12] Mr. Fuller argues the district court erred in applying the "hot pursuit" exception. He maintains the pursuit was not "hot" because Deputy Kellison paused his pursuit to speak with the SUV passenger and to wait for back-up. He also contends there was no need for immediate police action because the violation leading to the chase was minor (no visible registration), no evidence was being destroyed, there were no imminent safety issues to the officers, and there was no danger of Mr. Fuller escaping because officers had surrounded the apartment building.

[¶13] For the "hot pursuit" exception to apply, there must be a "pursuit" and the pursuit must be "hot." Pursuit requires "some sort of a chase, but it need not be an extended hue and cry in and about (the) public streets." *United States v. Santana*, 427 U.S. 38, 42-43, 96 S.Ct. 2406, 2410, 49 L.Ed.2d 300 (1976) (quotation marks omitted). It must, however, be "immediate or continuous . . . from the scene of a crime." *Welsh*, 466 U.S. at 753, 104 S.Ct. at 2099. *See also, Smith v. Stoneburner*, 716 F.3d 926, 931 (6th Cir. 2013) ("The 'pursuit' begins when police start to arrest a suspect in a public place, the suspect flees and the officers give chase.") (citing *Cummings v. City of Akron*, 418 F.3d 676, 686 (6th Cir. 2005)). For a pursuit to be "hot," there must be an emergency requiring immediate police action. *Smith*, 716 F.3d at 931 ("What makes the pursuit 'hot' is the emergency nature of the situation, requiring immediate police action.") (citation and some internal quotation marks omitted). *See also, Cummings*, 418 F.3d at 686 ("Typically, hot pursuit involves a situation where a suspect commits a crime, flees and thereby exposes himself to the public, attempts to evade capture by entering a dwelling, *and the emergency nature of the situation necessitates immediate police action to apprehend the suspect*.") (emphasis added)

4

(citations omitted). The officers' entry into Mr. Fuller's apartment in this case was neither a "pursuit" nor "hot."

[¶14] Deputy Kellison chased Mr. Fuller in his vehicle for four blocks and into an apartment complex. However, at the time the officers entered Mr. Fuller's apartment, the chase was no longer "immediate or continuous . . . from the scene of a crime" because it had been interrupted by Deputy Kellison's decision to call and wait for back-up. Once back-up arrived, Deputy Kellison walked around the apartment building and other officers secured its perimeter. Although only 8-13 minutes passed from the time Deputy Kellison called for back-up and the officers' entry into Mr. Fuller's apartment, this "break" rendered Deputy Kellison's pursuit of Mr. Fuller neither "immediate" nor "continuous" from the scene of a crime. There was no "pursuit."

[¶15] The Supreme Court's decision in *Welsh* is instructive. After swerving off the road and coming to a stop in a field, Mr. Welsh exited his vehicle and walked away from the scene. *Welsh*, 466 U.S. at 742, 104 S.Ct. at 2093-94. A few minutes later, the police arrived at the scene and learned Mr. Welsh's address was within walking distance. *Id.* Without first obtaining a warrant, the officers went to the address, entered the home, found Mr. Welsh in his upstairs bedroom, and arrested him. *Id.* at 743, 104 S.Ct. at 2094. The Supreme Court concluded the "hot pursuit" exception did not justify the officers' warrantless entry into Mr. Welsh's home "because there was no immediate or continuous pursuit of the petitioner from the scene of a crime." *Id.* at 753, 104 S.Ct. at 2099. That was so even though Mr. Welsh's vehicle went off the road "[s]hortly before 9 [p.m.]" and the police arrived at his residence "about 9 p.m." *Id.* at 742-43, 104 S.Ct. at 2093-94. Like the officers in *Welsh*, Deputy Kellison did not immediately or continually chase Mr. Fuller from the streets of downtown Gillette. Rather, Deputy Kellison stopped his pursuit and called for back-up.

[¶16] The pursuit in this case was also not "hot." At the time the officers entered Mr. Fuller's apartment, there was no emergency requiring immediate police action.

[¶17] The officers' warrantless entry to arrest Mr. Fuller was not necessary to prevent harm to Deputy Kellison or another person. Mr. Fuller had not threatened Deputy Kellison or any other individual with physical harm. There was no indication Mr. Fuller was armed. There was also no evidence of a third party inside the apartment or that Mr. Fuller posed a danger to any other person while holed up in his apartment. Indeed, by retreating into his apartment, any danger he posed to the community by driving without a visible registration and in excess of the speed limit had dissipated. While the passenger in the SUV claimed not to know Mr. Fuller's identity, she identified herself and Deputy Kellison was able to quickly determine she had no warrants. Moreover, at the time of entry, back-up officers had arrived and secured the passenger.

5

[¶18]   At the time of entry, there was little to no risk of Mr. Fuller escaping because officers had secured the apartment's perimeter.  There was also no risk of any relevant evidence being destroyed because the only criminal activity Deputy Kellison had observed at that time was driving without a visible registration and eluding and interfering with a police officer.  While Mr. Fuller was eventually arrested and charged with driving under the influence and possession of marijuana, the evidence supporting those charges was not discovered until <u>after</u> the officers unlawfully entered Mr. Fuller's apartment.

[¶19]   Deputy Kellison testified that at the time of entry, he had probable cause to arrest Mr. Fuller for driving without a visible registration, eluding a police officer, and interfering with his investigation by ignoring his commands to stop.  "[A]n important factor to be considered when determining whether any exigency exists is the gravity of the underlying offense for which the arrest is being made."  *Welsh*, 466 U.S. at 753, 104 S.Ct. at 2099.  "[A]lthough no exigency is created simply because there is probable cause to believe that a serious crime has been committed, . . . application of the exigent-circumstances exception in the context of a home entry should rarely be sanctioned when there is probable cause to believe that only a minor offense . . . has been committed."  *Id*. (citation omitted).  In *Rideout*, we concluded "the distinction drawn . . . between minor offenses that do not justify a warrantless entry into a residence and those offenses that do is predicated upon whether the subject offense carries a potential jail term."  *Rideout v. State*, 2005 WY 141, ¶ 30, 122 P.3d 201, 210 (Wyo. 2005).

[¶20]   The district court decided driving without a visible registration was a "minor offense."  However, it concluded the eluding and interference offenses were jailable misdemeanors.  *See* Wyo. Stat. Ann. §§ 6-5-204(a) ("A person commits a misdemeanor punishable by imprisonment for not more than one (1) year, a fine of not more than one thousand dollars ($1,000.00), or both, if he knowingly obstructs, impedes or interferes with or resists arrest by a peace officer while engaged in the lawful performance of his official duties."); 31-5-225(b) ("[E]very person convicted of fleeing or attempting to elude a police officer shall be punished by a fine of not more than seven hundred fifty dollars ($750.00), or by imprisonment for not more than six (6) months, or both.").  The court also noted Mr. Fuller had escalated his criminal behavior from a minor traffic infraction to interference with a police officer.  Although the eluding and interference offenses are not considered "minor offenses" under *Rideout*, they were nonetheless non-violent misdemeanors in this case.  Moreover, Mr. Fuller did not escalate his criminal behavior any more than any other suspect who avoids arrest by seeking refuge in his home.  While we do not condone his actions, Mr. Fuller did not attempt to, nor did he, physically harm Deputy Kellison or any other person.

[¶21]   The State argues Deputy Kellison's decision to call and wait for back-up did not interrupt the pursuit and was reasonable given the risks to his safety.  It explains: "Deputy Kellison pursued [Mr.] Fuller through the public streets of Gillette at 3 a.m., then found himself positioned between the fleeing suspect, who had barricaded himself inside an

apartment, and the suspect's passenger sitting in the [SUV] behind him. . . . With no information about the suspect, no way to find the registered owner of the [SUV], and no reassurance from the passenger, Deputy Kellison made the reasonable choice to call for assistance, secure the apartment's front door, and proceed into the home to conclude the pursuit and arrest [Mr.] Fuller before the situation got worse." It relies on several federal cases for the proposition that the "hot pursuit" exception applies even when an officer takes the time to assess the situation and plan for his own safety. *See United States v. Fuller*, 572 F.Appx. 819 (11th Cir. 2014) (unpublished); *United States v. Robertson*, 305 F.3d 164 (3d Cir. 2002); *United States v. White*, 185 F.Supp.3d 1295 (D. Utah 2016).

[¶22] The reasonableness of Deputy Kellison's decision to call for back-up is not before us. The question is whether the officers' entry into Mr. Fuller's apartment without first securing a warrant was justified under the "hot pursuit" exception. The answer is no. The cases the State relies on do not convince us otherwise. They involved pursuits where the officers lost sight of the fleeing suspects. Although the officers had to obtain information to re-locate the suspects, they did so during their pursuit of the suspects. As a result, there was no "break" in the pursuits; they were "continuous or immediate . . . from the scene of a crime." *See Fuller*, 572 F.Appx. at 820 (while pursuing fleeing suspects, officer learned over the police radio that two suspicious individuals were in a nearby backyard); *Robertson*, 305 F.3d at 165-66 (upon losing sight of suspects, officers were immediately informed by a bystander that suspects had boarded a public bus); *White*, 185 F.Supp.3d at 1300-1301 (after suspect fled into one of four apartments, officers quickly eliminated three of the apartments as the suspect's hiding place). In this case, Deputy Kellison never lost sight of Mr. Fuller and there was a "break" in the pursuit to call and wait for back-up. Moreover, in each of these cases, unlike here, emergencies existed which necessitated immediate police action. *See Fuller*, 572 F.Appx. at 820-21 (during pursuit of three individuals who had fled on foot from a stolen vehicle, officer observed the defendant, who was wearing tactical gear with a police insignia, remove a gun from his waistband and drop it into a trash can he was sitting on); *Robertson*, 305 F.3d at 165-66, 169 (pursuit of robbery suspects, one of whom was allegedly armed, onto a public bus); *White*, 185 F.Supp.3d at 1299-1301, 1309-10 (pursuit of suspect believed to be armed and with a known history of drug distribution, violent crimes, and gang membership who had hidden in one of four apartments).

[¶23] The circumstances in this case are more analogous to those in *Mascorro v. Billings*, 656 F.3d 1198 (10th Cir. 2011). Officer Billings observed 17-year-old Joshua Mascorro driving without taillights. *Id.* at 1202. When Officer Billings attempted to pull him over, Joshua did not stop but drove two blocks to his parents' house, ran inside, and hid in the bathroom. *Id.* Officer Billings followed Joshua to his home, entered the home, and arrested him. *Id.* at 1202-03. Joshua's parents sued Officer Billings, claiming, *inter alia*, unlawful entry. *Id.* at 1203. Officer Billings argued he was entitled to qualified immunity because the warrantless entry into the Mascorros' home was justified by probable cause and the "hot pursuit" of a fleeing suspect. *Id.* at 1204. The Tenth Circuit disagreed. *Id.* at 1207.

7

While Officer Billings had probable cause to arrest Joshua for a traffic offense, the court decided the circumstances did not amount to the kind of exigency excusing an officer from obtaining a warrant before entering a home. *Id*. at 1205-07. It explained:

> The intended arrest was for a traffic misdemeanor committed by a minor, with whom the officer was well acquainted, who had fled into his family home from which there was only one exit. The risk of flight or escape was somewhere between low and nonexistent. Moreover, there was no evidence which could have potentially been destroyed and there were no officer or public safety concerns. There is nothing to indicate the sort of "real immediate and serious consequences" of postponing action to obtain a warrant required for a showing of exigent circumstances. *See Welsh*, 466 U.S. at 751, 104 S.Ct. 2091. The warrantless entry based on hot pursuit was not justified.

*Id.* at 1207.

[¶24] Deputy Kellison was not familiar with Mr. Fuller and a third-party was present. Nevertheless, like in *Mascorro*, the intended arrest in this case was for non-violent misdemeanors committed by an individual who fled to his single-exit apartment. The risk of escape was low to nonexistent due to the presence of back-up officers surrounding the apartment. There was no evidence which could have been destroyed, and any officer or public safety concerns were minimal due to the presence of multiple officers and the lack of any physical threats. Quite simply, there was no compelling need requiring immediate police action.[2]

## CONCLUSION

[¶25] The district court erred in concluding the officers' warrantless entry into Mr. Fuller's apartment to arrest him was constitutional under the "hot pursuit" exception to the Fourth Amendment's warrant requirement. We reverse the district court's denial of Mr. Fuller's motion to suppress and remand for further proceedings consistent with this opinion.

---

[2] We recognize many of the emergencies making a pursuit "hot" are also "exigent circumstances" justifying a police officer acting without a warrant, i.e., officer and public safety, imminent destruction of evidence, and preventing a suspect from escaping. This overlap is natural given "hot pursuit" of a fleeing suspect is itself an "exigent circumstance."