# IN THE SUPREME COURT, STATE OF WYOMING

## 2024 WY 4

OCTOBER TERM, A.D. 2023

January 11, 2024

REMI LARSEN,

Petitioner,

v.

THE STATE OF WYOMING,

Respondent.

S-23-0063

*Original Proceeding*
*Petition for Writ of Review*
*District Court of Sheridan County*
*The Honorable Darci A.V. Phillips, Judge*

*Representing Appellant:*
Office of the State Public Defender: Diane Lozano, State Public Defender; Kirk A. Morgan, Chief Appellate Counsel; Jeremy Meerkreebs, Assistant Appellate Counsel.

*Representing Appellee:*
Bridget L. Hill, Attorney General; Jenny L. Craig, Deputy Attorney General; Kristen R. Jones, Senior Assistant Attorney General; Donovan Burton, Assistant Attorney General.

*Before FOX, C.J., KAUTZ, BOOMGAARDEN, GRAY, and FENN, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**BOOMGAARDEN, Justice.**

[¶1]    Remi Larsen moved the circuit court to suppress evidence in her pending misdemeanor possession of a controlled substance prosecution.  The court granted Ms. Larsen's motion.  The State subsequently filed a petition for an interlocutory writ of review in the district court to challenge the circuit court's suppression order.  The district court granted the State's petition and later reversed the circuit court's order after considering the parties' briefing.  We then granted Ms. Larsen's petition to review the district court's order.  We conclude the district court abused its discretion when it initially granted the State's petition for an interlocutory writ of review.  We reverse with instructions to reinstate the circuit court's suppression order.

*ISSUE*

[¶2]    The dispositive issue is whether the district court abused its discretion when it granted the State's petition for an interlocutory writ of review.

*FACTS*

[¶3]    On February 2, 2022, Ms. Larsen called 911 alleging her neighbor, David Lamers, assaulted her with a club-type object outside her apartment building.  Sheridan Police Officer Alex Murray and Corporal Chase Philipp responded to the call.  Ms. Larsen was seated in her vehicle when Officer Murray arrived.  Officer Murray questioned Ms. Larsen about the incident.  She told Officer Murray that Mr. Lamers accosted her outside of her apartment building, yelled at her about her dog, smacked pepper spray out of her hand, and threatened her with a dog toy generally used to throw tennis balls.  She also expressed concern about Mr. Lamers videotaping her from his apartment.

[¶4]    Around the time Officer Murray was questioning Ms. Larsen, Corporal Philipp had walked into the common area of Ms. Larsen's apartment building.  He smelled a strong odor of marijuana and believed it was emanating from Ms. Larsen's apartment.  Corporal Philipp informed Officer Murray of the marijuana odor.  Officer Murray confirmed with Ms. Larsen the location of her apartment and proceeded to walk into the common area where he confirmed the marijuana smell.  Officer Murray returned to Ms. Larsen and asked her: "Will you come to your apartment with me real quick?"  Ms. Larsen inquired why and he stated, "It just reeks of marijuana in there. I just want to make sure it's not coming from yours."  Ms. Larsen replied, "Oh, no, I. . ."  Officer Murray then stated "Okay. Can we walk through there real quick?"  Ms. Larsen unequivocally stated "No."

[¶5]    Officer Murray continued to question Ms. Larsen.  He asked her how much marijuana she had and she responded, "Just a little bit. Not a lot." Officer Murray explained to Ms. Larsen that if she only had a little bit he would just issue a ticket.  Ms. Larsen expressed concern about receiving a ticket because she was not sure if she was still on

1

probation and asserted again that she only had a small amount of marijuana. The officer again asked her to retrieve the marijuana and assured her that he would only give her a ticket. Ms. Larsen exited her vehicle and led Officer Murray to her apartment.[1]

[¶6]    Ms. Larsen unlocked her apartment door while Officer Murray stood behind her. She asked Officer Murray to stay at the threshold of the apartment. While Ms. Larsen went to retrieve the marijuana, Officer Murray took a step inside and looked around purportedly for officer safety. Corporal Philipp stood outside the apartment in the hallway. When Ms. Larsen returned to Officer Murray with a container of marijuana, he asked if she had given him the full amount. Ms. Larsen again went back into her apartment and retrieved additional marijuana.

[¶7]    Ms. Larsen was cited for misdemeanor possession of a controlled substance under Wyo. Stat. Ann. § 35-7-1031(c)(i)(A) (2023). She later moved to suppress the marijuana evidence obtained from her apartment, arguing in relevant part that she did not voluntarily consent to Officer Murray's warrantless entry into her home, no exigent circumstances existed to justify Officer Murray's warrantless entry, and the evidence was obtained in violation of her right against unreasonable search and seizures.

[¶8]    The circuit court held a suppression hearing at which Corporal Philipp, Officer Murray, and Ms. Larsen testified. The court ruled from the bench. It held the State failed to prove by clear and positive testimony that Ms. Larsen consented to the search. The court found Ms. Larsen twice said "no" to Officer Murray's requests to enter her apartment, Officer Murray persisted in seeking consent, and these facts demonstrated Ms. Larsen only acquiesced to Officer Murray's entry rather than voluntarily consented. The court further stated:

> I will also add this, I am taking **judicial notice** of the fact that five days after this event I witnessed Mr. Lamers and this young lady in my courtroom for [a] protection order. I think prior to that, you can ask every one of my clerks about Mr. Lamers' attitude and how Mr. Lamers came across and his, frankly, bullying.
>
> I saw this young lady distraught five days later. And I get to bring that with me to this bench, of how distraught she was over that situation.

---

[1] The officers similarly requested consent from Mr. Lamers to search his apartment. Mr. Lamers denied the request and the officers did not enter.

So taking that all into account, she was distraught that day. She was concerned. She was scared. She acquiesced to go back into that apartment.

And I'm going to go back to this. Mr. Lamers can say no once and that's fine. How often does a young lady have to say no?

(emphasis added). The court soon after issued a written order incorporating the factual findings from the hearing. The written order did not address the judicial notice the court took during the oral ruling but instead made additional factual findings, reiterated the court's conclusion that Ms. Larsen acquiesced rather than consented to Officer Murray's entry into the apartment, and held Officer Murray's warrantless entry into Ms. Larsen's apartment violated the Fourth Amendment, thus warranting suppression of the marijuana evidence.

[¶9] The State petitioned the district court seeking an interlocutory writ of review of the circuit court's suppression order under W.R.A.P. 13.02. The State asserted a writ of review was necessary because, among other alleged errors, the circuit court erroneously concluded Ms. Larsen's consent was involuntary, the court erroneously took judicial notice of Ms. Larsen's demeanor from a separate hearing, and the court erroneously suppressed the evidence. Ms. Larsen asked the court to deny the petition, arguing the State was not entitled to extraordinary relief while the criminal matter remained pending. She noted such relief is only available to the State in rare and unusual circumstances involving issues of first impression, constitutional magnitude, and great public import. The district court granted the State's petition, which we discuss further below.

[¶10] After receiving briefs and hearing oral arguments, the district court issued a written order reversing the circuit court. Ms. Larsen subsequently filed a petition for writ of review of the district court's order in this Court. We granted her petition.

## DISCUSSION

[¶11] We review a district court's grant of a petition for an interlocutory writ of review under an abuse of discretion standard. *See* W.R.A.P. 13.01(b); W.R.A.P. 13.02 (providing that district courts may grant interlocutory writs of review in criminal actions); *State v. Newman*, 2004 WY 41, ¶ 7, 88 P.3d 445, 447 (Wyo. 2004) (citation omitted). "A district court does not abuse its discretion if it could reasonably conclude as it did." *Winney v. Jerup*, 2023 WY 113, ¶ 14, 539 P.3d 77, 82 (Wyo. 2023) (citations omitted). However, as discussed below, precedent expressly limits a district court's discretion to grant the State an interlocutory writ of review of a criminal pretrial order. *See State v. Heiner*, 683 P.2d 629, 632 (Wyo. 1984); *State v. Evans*, 944 P.2d 1120, 1124 (Wyo. 1997); *see also Newman*, 2004 WY 41, ¶ 7, 88 P.3d at 447 (citing *Wright v. State*, 707 P.2d 153, 156 (Wyo. 1985)).

3

***I.*** ***Precedent expressly limits a district court's discretion to grant the State interlocutory writs of review in criminal matters to rare and unusual cases that present questions of first impression, constitutional magnitude, and great public import.***

[¶12]  Historically, the State had no right to a direct appeal from adverse trial court decisions in a criminal case unless it was expressly granted by statute. *State v. Ginther*, 77 P.2d 803, 803 (Wyo. 1938); *see also Ken v. State*, 2011 WY 167, ¶ 32, 267 P.3d 567 (Wyo. 2011) (noting the State "in a criminal case does not have the right of direct appeal" (citing *Crozier v. State*, 882 P.2d 1230, 1236 (Wyo. 1994))).  Wyo. Stat. Ann. §§ 7-12-102 through -104 affords the only statutory procedure by which the State may seek review of an adverse criminal ruling—a bill of exceptions.[2]  Notably, a bill of exceptions permits this Court only to determine specified issues for future cases.  Wyo. Stat. Ann. § 7-12-104(b).  It does not "reverse nor in any manner affect the judgment of the court in the case in which the bill of exceptions was taken." *Id.*; *Crozier*, 882 P.2d at 1236 (citation omitted).  Until the 1980s, we held the bill of exceptions procedure was the exclusive means for the State to challenge adverse rulings in criminal cases.  *Newman*, 2004 WY 41, ¶¶ 10–15, 88 P.3d at 448–51; *State ex rel. Gibson v. Cornwell*, 14 Wyo. 526, 85 P. 977, 979 (1906) ("It is only upon a compliance with the provisions of the statute in question that this court obtains jurisdiction to review any ruling of the district court adverse to the state in criminal prosecutions."); *see also State v. Selig*, 635 P.2d 786, 788 (Wyo. 1981) (citations omitted).

[¶13]  We first departed from this rule in *Mengel* where the Court granted the City of Laramie a writ of review from a municipal court order suppressing evidence of a DUI defendant's refusal to submit to a chemical test under Wyo. Stat. Ann. § 31-6-105(f) (1983), *repealed by* 2011 Wyo. Sess. Laws ch. 178, § 2.  *City of Laramie v. Mengel*, 671 P.2d 340, 341–42 (Wyo. 1983).  The municipal court held the statute was unconstitutional because it violated the defendant's right against self-incrimination. *Id.*  Upon review, this Court stated Article 5, section 3 of the Wyoming Constitution gave it the authority to grant such writs especially when an appeal would not be "plain, speedy and adequate."[3]  *See id.* at 344 (quoting *Call v. Town of Afton*, 278 P.2d 270, 273 (Wyo. 1954)).  We characterized our decision to grant a writ of review as discretionary.  *Id.* at 345.  And we explained:

---

[2] A bill of exceptions is "a formal written statement of exceptions taken to the decisions, rulings, instructions, or opinion of the trial court, setting forth the proceedings on the trial, the acts of the trial court alleged to be erroneous, the objections and exceptions to such acts, and the grounds for such objections and exceptions, all authenticated by the trial court."  5 Am. Jur. 2d *Appellate Review* § 417 (October 2023 update); *see also* Wyo. Stat. Ann. § 7-12-102.

[3] Article 5, section 3 of the Wyoming Constitution states, in part: "The supreme court shall also have power to issue writs of mandamus, review, prohibition, habeas corpus, certiorari, and other writs necessary and proper to the complete exercise of its appellate and revisory jurisdiction."

The City of Laramie has no appeal from the order of its municipal judges, and it does not have available to it even the review encompassed by the statutes providing for a bill of exceptions. The issue, further is one in which the people of the City of Laramie and the people of the State of Wyoming in other cities where the ruling of the Municipal Judges of the Municipal Court of the City of Laramie might be followed have an interest. The ruling itself is premised upon constitutional grounds and makes the issue one of constitutional magnitude. . . .

The question sought to be reviewed in this case we perceive to be one of great public import and of first impression.

*Id.* (citations omitted).

[¶14] We later expanded this reasoning to authorize interlocutory review of a district court's suppression order even when a bill of exceptions was available. *Heiner*, 683 P.2d at 632–33; *see also State v. Welch*, 873 P.2d 601, 602 (Wyo. 1994) (granting interlocutory review of a suppression order); *Evans*, 944 P.2d at 1124 (same). In *Heiner*, the defendant was charged with arson and arson with intent to defraud his insurer. 683 P.2d at 630–31. The defendant's insurer provided the prosecution an inventory sheet the defendant had prepared to list property allegedly destroyed in a fire. *Id.* at 631, 633. The defendant moved to suppress the inventory sheet arguing the insurer was acting as an agent of the police and the sheet was obtained in violation of his *Miranda* rights. *See id.* at 631, 635. The district court suppressed the evidence. *Id.* at 631.

[¶15] This Court granted an interlocutory writ of review. *See id.* at 632–33. We reasoned a writ of review "subserves a good purpose in instances in which an appeal (or a bill of exceptions) is not plain, speedy and adequate." *Id.* at 632 (citing *Call*, 278 P.2d 270). We then held a bill of exceptions is an inadequate remedy when the State seeks to challenge suppression orders that can result in defendants obtaining acquittals. *Id.* Further:

In this case, like *City of Laramie v. Mengel*, the rulings of the district court were premised upon constitutional grounds, which results in the presentation to this court of issues of constitutional magnitude. Whether [written statements a defendant made to a private actor merit constitutional protection] is a significant question of first impression in the State of Wyoming. Consequently, we conclude that because of the importance of the evidence suppressed or the use of which is potentially denied to the State of Wyoming; the constitutional magnitude of the issues raised; and the

importance of determining the rule with respect to such matters in the State of Wyoming, the court appropriately exercised its discretion in granting the writ of certiorari in this case.

*Id.* at 632–33.[4]  As in *Mengel*, we held the writ was appropriately granted only because no adequate remedy existed, and the issue was a matter of first impression, constitutional magnitude, and great public import.  *See id.*

[¶16]  In *State v. Sodergren*, we further emphasized that we would only exercise our discretion to grant the State an interlocutory writ of review "in unusual circumstances and upon rare occasions."  686 P.2d 521, 528 (Wyo. 1984).  *Mengel*, *Heiner*, and *Sodergren* have since operated to narrowly confine our discretion to grant the State interlocutory writs of review in criminal cases.  *See Evans*, 944 P.2d at 1124; *see also Newman*, 2004 WY 41, ¶¶ 8–20, 88 P.3d at 447–52 (discussing Wyoming's jurisprudence on granting the State's petitions for writs of review in criminal cases).[5]  We now consider whether the district court appropriately exercised its discretion to grant the State a writ of review here.

## II.    The district court abused its discretion because this case cannot be reasonably characterized as rare and unusual.

[¶17]  The district court found that a bill of exceptions did not provide the State an adequate remedy.  Then, the district court explained it granted the State an interlocutory writ of review because the issue of the circuit court taking judicial notice of Ms. Larsen's demeanor from a separate hearing raised a matter of first impression in Wyoming, and Officer Murray's warrantless search of Ms. Larsen's home implicated the Fourth Amendment and thus was an issue of constitutional magnitude and great public import.  We agree with the district court that a bill of exceptions would not provide a "plain, speedy, or adequate remedy" where suppression of the key evidence—the marijuana—was at issue.  *See Heiner*, 683 P.2d at 632 ("[T]he inadequacy of the bill of exceptions after an acquittal is patent.").  We differ with the district court, however, in finding the State's challenge of the circuit court's suppression order raised questions of constitutional magnitude and issues of great public import.  Accordingly, this case cannot be reasonably characterized as rare and unusual.

---

[4] In instances where the State seeks review in a criminal case outside the bill of exceptions procedure, this Court exercises the same narrow discretion regardless of whether the State seeks review through a writ of review or writ of certiorari.  *See Newman*, 2004 WY 41, ¶¶ 7–8, 88 P.3d at 447–48 (discussing the State's petition for a writ of review); *Heiner*, 683 P.2d at 632 (discussing the State's petition for a writ of certiorari).
[5] In *Newman*, this Court acknowledged a defendant's constitutional right against double jeopardy also may limit the State's ability to seek a writ of review.  *Newman*, 2004 WY 41, ¶¶ 22–23, 88 P.3d at 453.  Because this case involves interlocutory review of a pretrial criminal order, we do not need to analyze whether Ms. Larsen was twice put in jeopardy when the district court granted the writ.

[¶18] Ms. Larsen's motion to suppress was grounded in the Fourth Amendment. It did not, however, raise any *constitutional* questions of first impression. The constitutional rules governing an officer's warrantless search of a home are well established. *See, e.g.*, *Woods v. State*, 2023 WY 32, ¶¶ 15–17, 527 P.3d 264, 267–68 (Wyo. 2023); *Hawken v. State*, 2022 WY 77, ¶¶ 14–21, 511 P.3d 176, 181–84 (Wyo. 2022); *Fuller v. State*, 2021 WY 36, ¶¶ 9–10, 481 P.3d 1131, 1134 (Wyo. 2021). The district court did not take issue with these rules or conclude that the circuit court had seriously erred in applying them. To the contrary, the district court relied in part on the same case law and legal principles as the circuit court. It simply reached a different conclusion about the voluntariness of Ms. Larsen's consent based on the evidence presented. The district court's grant of the writ of review was therefore not grounded in the constitution; rather, it was grounded in the circuit court's judicial notice comments during the suppression hearing.

[¶19] Judicial notice is an evidentiary matter governed by the Wyoming Rules of Evidence 201. It is patently not a question of constitutional magnitude. W.R.E. 201(b) only allows judicial notice of adjudicative facts "not subject to reasonable dispute" in that they are "generally known within the territorial jurisdiction of the trial court or . . . capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Id.* Judicial notice generally involves establishing adjudicative facts that are "matters of common knowledge." *Davison v. Wyoming Game & Fish Comm'n*, 2010 WY 121, ¶ 20 n.5, 238 P.3d 556, 563 n.5 (Wyo. 2010) (listing cases taking such judicial notice).

[¶20] By comparison, the cases in which this Court has granted the State an interlocutory writ of review after a suppression hearing each involved "significant questions" of first impression directly related to the constitutional issues raised in the hearing. *See Heiner*, 683 P.2d at 636–37 (holding for the first time the requirements of *Miranda* are not invoked by an insurance company questioning a private citizen); *Evans*, 944 P.2d at 1127–29 (holding the State had the burden of proof to demonstrate the accused's confession was voluntary as a matter of due process); *see also Welch*, 873 P.2d at 604–05 (holding for the first time that an officer may develop reasonable suspicion based solely on observing lawful conduct and the reasonableness of an officer's detention of a vehicle "is to be measured by whether the police acted diligently under all the circumstances of the case and whether the detention involved delay unnecessary to a legitimate police inquiry" (citations omitted)).

[¶21] The propriety of the circuit court's judicial notice comments did not similarly implicate a "significant question" directly related to how the Fourth Amendment applied to the seizure of marijuana from Ms. Larsen's apartment.[6] The judicial notice of Ms.

---

[6] The circuit court's judicial notice comments are not dispositive of whether the consent exception to the Fourth Amendment's warrant requirement applies in this case. While trial courts can take judicial notice of their own records in cases closely related to the one before it, *In re K.L.S.*, 2004 WY 87, ¶ 37, 94 P.3d

Larsen's demeanor from a prior civil proceeding did not determine whether she was entitled to constitutional protections, *Heiner*, 683 P.2d at 636–37, whether the circuit court applied the correct burden of proof, *Evans*, 944 P.2d at 1127–29, or whether the court applied the appropriate legal analysis under the Fourth Amendment, *Welch*, 873 P.2d at 604–05. Instead, the judicial notice was an evidentiary matter incidental to the circuit court's constitutional analysis, as evidenced by the fact the circuit court never even referenced the judicially noticed facts in its written order.

[¶22] The State's petition for a writ of review also failed to articulate a matter of great public import. *Newman*, 2004 WY 41, ¶ 20, 88 P.3d at 452 (citation omitted); *Mengel*, 671 P.2d at 345. This case involves the suppression of a misdemeanor amount of marijuana. It does not involve any crimes against persons or felonious activity, or implicate separation of powers, the constitutionality of state statutes, or constitutional questions of first impression. This case is unlike those we previously have deemed of great public import when granting the State an interlocutory writ of review. *See, e.g.*, *Newman*, 2004 WY 41, 88 P.3d 445 (analyzing constitutional questions and separation of powers issues after a district court declared a mistrial involving aggravated assault and battery and dismissed the charges with prejudice); *Welch*, 873 P.2d 601 (analyzing constitutional questions related to the suppression of over 347 pounds of marijuana in a felony intent to deliver a controlled substance prosecution); *Heiner*, 683 P.2d 629 (analyzing a constitutional question of first impression involving suppressed evidence related to arson and fraud); *Mengel*, 671 P.2d 340 (analyzing a constitutional question of first impression related to the constitutionality of a statute after evidence relevant to a DUI prosecution was suppressed).

[¶23] In sum, whether the circuit court improperly took judicial notice during a suppression hearing cannot be reasonably characterized as a "rare and unusual" circumstance involving a question of constitutional magnitude or great public import. As such, the district court abused its narrow discretion when it granted the State an interlocutory writ of review.[7] *See Newman*, 2004 WY 41, ¶ 7, 88 P.3d at 447 (citation omitted).

---

1025, 1034 (Wyo. 2004) (citations omitted), the circuit court erred when it took judicial notice of Ms. Larsen's demeanor from a separate civil proceeding. Ms. Larsen's demeanor from a separate proceeding is clearly not generally known within the jurisdiction or capable of accurate and ready determination. *See* W.R.E. 201(b); *In re CPR*, 2009 WY 76, ¶ 6, 209 P.3d 879 (Wyo. 2009) (finding the district court abused its discretion when it judicially noticed facts not "generally known" in its jurisdiction).

[7] Our grant of Ms. Larsen's petition for a writ of review is distinguishable from the district court's grant of the State's petition. The district court's erroneous grant of an interlocutory writ of review and reversal of the circuit court's suppression order affected Ms. Larsen's constitutional rights. And, although Ms. Larsen could have appealed the district court's order if she was convicted and sentenced, the interests of judicial economy demanded we consider the district court's order at this time. *See Saunders v. Hornecker*, 2015 WY 34, ¶¶ 14–15, 344 P.3d 771, 776 (Wyo. 2015) (granting a writ of certiorari in part due to "the interests of judicial economy").

[¶24] The district court's order is therefore reversed and remanded with instructions to reinstate the circuit court's suppression order.