FILED
United States Court of Appeals
Tenth Circuit

January 29, 2013

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

JASON WAYNE WHITE,

     Defendant - Appellant.

No. 12-5124
(D.C. No. 4:12-CR-00034-GKF-1)
(N.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **LUCERO**, **O'BRIEN**, and **MATHESON**, Circuit Judges.

In February 2012, Jason Wayne White was charged in a three-count indictment

with firearm- and drug-related offenses. Mr. White unsuccessfully moved to suppress

evidence seized from his home, entered a conditional guilty plea, and was sentenced to 53

months of imprisonment. He now appeals from the district court's denial of his motion to

---

[*]After examining Appellant's brief and the appellate record, this panel has
determined unanimously that oral argument would not materially assist the determination
of this appeal. *See* Fed. R. App. P. 34(a)(2) and 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument. This order and judgment is not
binding precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed.
R. App. P. 32.1 and 10th Cir. R. 32.1.

suppress.

Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

## I. BACKGROUND

### A. *Factual History*

The district court held a hearing on Mr. White's motion to suppress. Mr. White presented one witness, his mother Loretta Webster. Her testimony of the events leading up to Mr. White's arrest differed from the testimony of officers who testified for the Government. The district court determined that the officers' testimony was "far more believable" than Ms. Webster's testimony. ROA, Vol. II at 72. We give deference to the district court's determinations of witness credibility, review its factual findings for clear error, and view the facts in the light most favorable to the Government. *United States v. Jones*, 701 F.3d 1300, 1308 (10th Cir. 2012).

On December 12, 2011, officers from the Claremore Police Department responded to a report that a male was attempting suicide with a handgun. Sergeant Stephen Cox, Officer David Thirion, and Officer Lance Jenson arrived at the residence and encountered Ms. Webster on the front lawn. She told the officers that Mr. White's friend, Laura Dorsch, had called her at work to tell her that Mr. White was suicidal and had pointed a handgun to his head. Ms. Webster told the officers that Ms. Dorsch had secured the handgun, given it to Ms. Webster, and left the home.

Ms. Webster led the officers into her home and showed them the location of Mr. White's upstairs bedroom. Sergeant Cox called up to his bedroom from the bottom of the stairs and instructed Mr. White to show his hands. Mr. White did so and was handcuffed.

Sergeant Cox asked where the gun was, and Mr. White directed him to a safe. Sergeant Cox located the safe, which had its door open, and saw that it was empty. Officers Thirion and Jenson also entered Mr. White's room to retrieve his clothing. The officers noticed drug paraphernalia in plain view on Mr. White's nightstand, and Officer Jenson took possession of it. When asked about the drug paraphernalia, Mr. White admitted to drug use.

Captain Milburn Litterell then arrived at the home. He spoke with Ms. Webster, who said she had taken and hidden the handgun. Captain Litterell asked whether he could have the gun. Ms. Webster agreed, and he followed her into her bedroom, where she retrieved a Springfield XD .45 caliber handgun from the far side of the bed and handed it to Captain Litterell. Mr. White was then transported to a nearby hospital.

B. *Procedural History*

On February 7, 2012, Mr. White was indicted on three charges: possession of a firearm and ammunition by a felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), possession of a firearm and ammunition by an unlawful user of a controlled substance in violation of §§ 922(g)(3) and 924(a)(2), and possession of a firearm and ammunition after conviction of a misdemeanor crime of domestic violence in violation of §§ 922 (g)(9) and 924(a)(2). Mr. White moved to suppress "any and all evidence seized from the residence

-3-

and any statements made by [him] to the officers" during the incident. ROA, Vol. I at 17. He argued that the officers had no basis for a warrantless entry into the home.

The district court denied the motion to suppress, concluding that the officers' warrantless entry into the home was justified because Ms. Webster consented to their entry. Alternatively, the district court found exigent circumstances justified a warrantless entry.

Mr. White entered a conditional guilty plea to the third count, possession of a firearm and ammunition after conviction of a misdemeanor crime of domestic violence, reserving his right to appeal the denial of the motion to suppress. On July 27, 2012, Mr. White filed a timely notice of appeal.

## II. DISCUSSION

Mr. White challenges the district court's denial of his motion to suppress. He argues that the evidence seized from the home and the statements he made to officers should be suppressed because the officers unlawfully entered the home without a warrant in violation of his Fourth Amendment rights. The Government responds that the district court correctly found that the officers' warrantless entry was lawful because Ms. Webster consented to their entry and because exigent circumstances justified entry. Because we affirm on the third-party consent issue, we do not address whether exigent circumstances justified the officers' warrantless entry.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S.

Const. amend. IV. Officers' entry into a home constitutes a search for Fourth Amendment purposes. *See Payton v. New York*, 445 U.S. 573, 585-86 (1980). If officers enter a home without a warrant, the search "is presumptively unreasonable, and evidence obtained from such a search is inadmissible, subject only to a few carefully established exceptions." *United States v. Harrison*, 639 F.3d 1273, 1278 (10th Cir. 2011).

"Voluntary consent to search is one such exception." *Id.* "Consent may be obtained from the individual whose property is searched, or in certain instances, from a third party who possesses either actual authority or apparent authority to consent to the search." *United States v. Cos*, 498 F.3d 1115, 1124 (10th Cir. 2007); *see also Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990) (voluntary consent can be obtained "from a third party who possesses common authority over the premises"). Thus, to establish third-party consent justifying a warrantless entry, the Government must show that (1) the third party had actual or apparent authority to consent to entry into the home, and (2) the consent was freely and voluntarily given. *United States v. Sanchez*, 608 F.3d 685, 689 (10th Cir. 2010).

Mr. White does not contest that Ms. Webster had actual authority to consent to the officers' entry into the home. He frequently refers to the residence as "her home" and notes that the firearm was retrieved from "her bedroom." Aplt. Br. at 5. On several occasions, we have held that if family members or other cohabitants have access to the residence, they have actual authority to consent to an entry or search of the home. *See United States v. Bass*, 661 F.3d 1299, 1305 (10th Cir. 2011) (holding defendant's

girlfriend had authority to consent to search as a joint occupant), *cert. denied*, 132 S. Ct. 1816 (2012); *Sanchez*, 608 F.3d at 689 (holding defendant's 15-year-old daughter had actual authority to consent because she "lived full time in the house and had unrestricted access to it"); *United States v. Andrus*, 483 F.3d 711, 720 (10th Cir. 2007) (holding that officers had a reasonable belief that defendant's father had authority to consent to the search of his son's room and computer because he owned the home and had access to the room and computer at will). Accordingly, we see no basis to disturb the district court's conclusion that Ms. Webster had authority to consent to the officers' entry into the home.

Although Ms. Webster had authority to consent to the officers' entry, the Government must show that she gave voluntary consent. This inquiry "consists of two parts: (1) the law enforcement officers must receive either express or implied consent, and (2) the consent must be freely and voluntarily given." *Jones*, 701 F.3d at 1317. "Whether a [party] freely and voluntarily gave . . . consent to a search is a question of fact and is determined from the totality of the circumstances." *Sanchez*, 608 F.3d at 689 (quotations omitted).

Mr. White insists that Ms. Webster never consented to the officers' entry into the home, arguing:

> [Ms. Webster] was met by police officers at the front door asking where the gun was located. She responded by *taking the officer to her bedroom and pointing out the location of the gun*. She did not invite the police officers into her home, they just came in. She did not ever give the Claremore Police Department any consent to search her home. They never asked permission to search.

Aplt. Br. at 5 (emphasis added) (citations omitted). We reject this argument.

Implied consent to enter a home is no less valid than explicit consent. *Jones*, 701 F.3d at 1320-21. Consent "must be clear, but it need not be verbal. Consent may instead be granted through gestures or other indications of acquiescence, so long as they are sufficiently comprehensible to a reasonable officer." *United States v. Guerrero*, 472 F.3d 784, 789-90 (10th Cir. 2007).

Mr. White acknowledges that Ms. Webster responded to the officer's question, made at the front door, by "taking [him] to her bedroom." Aplt. Br. at 5; *see also id.* at 10 ("If it was an emergency situation why did Officer Cox follow Mrs. Webster into the house?"). Sergeant Cox and Officer Thirion also testified that after they asked Ms. Webster where Mr. White was, she said he was upstairs and led them into the house. Under either version of events, Ms. Webster took the affirmative action of leading the officers into the home. Such an affirmative act would lead a reasonable officer responding to a reported suicide attempt in the home to believe that Ms. Webster consented to entry into the home. *See Jones*, 701 F.3d at 1321 (finding implied consent to enter a home where officers asked to search, the defendant turned and walked toward the back door of the home, and the officers followed the defendant inside). Her act of retrieving the firearm for the officers further indicates she consented to their entry.

The only remaining issue is whether Ms. Webster's consent was freely and voluntarily given. Consent cannot be "'coerced, by explicit or implicit means, by implied threat or covert force.'" *United States v. Kimoana*, 383 F.3d 1215, 1225 (10th Cir. 2004)

-7-

(quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 228 (1973)).  "Consent is voluntary if there is no indication of either force or intimidation."  *Id.* (quotations omitted).  We consider several factors to determine whether an individual has been coerced, including "physical mistreatment, use of violence or threats of violence, promises or inducements, deception or trickery."  *United States v. Silva-Arzeta*, 602 F.3d 1208, 1214 (10th Cir. 2010) (quotations omitted).

Mr. White does not contest that Ms. Webster voluntarily led the officers into the home.  And, after reviewing the record, we conclude that Ms. Webster's consent was not "borne out of duress or coercion."  *Jones*, 701 F.3d at 1320.  Although multiple officers arrived at the home, which is a factor we consider in assessing voluntariness, *see Harrison*, 639 F.3d at 1278, nothing in the record indicates their presence made Ms. Webster consent because she "felt coerced, frightened or otherwise threatened," *United States v. Iribe*, 11 F.3d 1553, 1557 (10th Cir. 1993).

In sum, Ms. Webster had actual authority to consent to the officers' entry into the home, she gave implied consent to their entry by leading them into the home, and her consent was voluntary.  Accordingly, we affirm the district court's determination that her voluntary consent justified the officers' warrantless entry into the home.

## III. **CONCLUSION**

For the foregoing reasons, we affirm the district court's denial of Mr. White's motion to suppress.

ENTERED FOR THE COURT


Scott M. Matheson, Jr.
Circuit Judge