# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-3725
_____

United States of America

*Plaintiff - Appellee*

v.

James Faler

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Davenport

_____

Submitted: June 14, 2016
Filed: August 9, 2016

_____

Before MURPHY and SHEPHERD, Circuit Judges, and PERRY,[1] District Judge.

_____

SHEPHERD, Circuit Judge.

A grand jury indicted James Faler with five counts of production of child pornography, in violation of 18 U.S.C. §§ 2251(a), (e), and 3559(e), and five counts relating to the registered sex offender enhancement, in violation of 18 U.S.C.

_____

[1]The Honorable Catherine D. Perry, United States District Judge for the Eastern District of Missouri, sitting by designation.

§ 2260A. Faler moved to suppress child pornography evidence seized by the government, but after the district court[2] denied the motion, Faler entered into a conditional plea agreement, reserving his right to appeal the denial of his motion to suppress. The district court[3] sentenced Faler to concurrent life imprisonment terms on each of the five counts of production of child pornography and consecutive ten year sentences on each of the five counts of failing to register as a sex offender, resulting in a total sentence of life imprisonment plus 600 months consecutive. Faler now appeals the denial of his motion to suppress. We affirm.

## I.

We discuss the facts as found by the district court. Autumn Centers, a leasing consultant in Louisville, Kentucky, called 9-1-1 to report Faler was engaged in suspicious activity. Centers told police that Faler was staying in the apartment of a Churchill Park Apartments resident. Centers reported that Faler had been "messing with the little kids that live around here," was acting "awfully weird," and had taken a child into the apartment. She also stated another resident had a picture of Faler "touching a little girl." Centers stated she had conducted internet research and determined Faler had been convicted of Iowa sex offenses and was a registered sex offender. Centers requested that police remove Faler from the apartment complex because he was not a registered resident, and Centers believed him to be a danger to the children in the apartment complex.

Three uniformed Louisville Police Officers responded to Centers' call. After verifying the information from her 9-1-1 call with Centers and confirming that Faler

---

[2]The Honorable James E. Gritzner, United States District Judge for the Southern District of Iowa.

[3]The Honorable John A. Jarvey, Chief Judge, United States District Court for the Southern District of Iowa.

was on the Iowa sex offender registry, officers proceeded to the ground-floor apartment of Michael Parks, the resident with whom Faler was residing according to Centers.

Officer Jonathan Noe knocked on Parks' door, and Parks answered. Parks told an investigator with the public defender's office that the officers "kind of pushed their way through" and "just walked in." Parks later testified under oath before a grand jury, "They knocked on the door. I answered. They asked if I knew [Faler]. I said, 'yes.' They asked if [Faler] was here. I said, 'yes,' and started pointing to the room. By that time [Faler] had come out to meet them."

Officer Noe testified at the suppression hearing that after answering the door, Parks initially denied Faler was in the apartment. As the officers continued talking with Parks, Faler then stepped out from a back room and into the view of the officers. Although Officer Noe did not recall his exact words, he stated that based on his training, he would have requested permission to enter the apartment. After that request, Officer Noe testified Parks turned around, pointed to Faler, and stepped out of the way.

Officer Moss testified that while Parks hesitated when asked if he knew Faler, he did admit to knowing him. After that inquiry, Faler came into the officers' view, and, according to Officer Moss, Officer Noe asked, "mind if we come in?" In response, Parks opened the door wider, moved out of the way, and the officers entered the apartment.[4]

---

[4]The third officer testified that she was too far back in the hallway to hear the conversation at the door or to observe Parks' response to the other officers.

Faler testified that he came out of a back room in the apartment after hearing his name but that he did not hear the officers ask for permission to enter the apartment. He stated when the officers saw him, "they stepped in."

About 30 minutes after entering the apartment, officers determined that Faler was in violation of his sex offender registration requirements, and they arrested Faler. As the officers were escorting Faler to the patrol car, Faler requested that the officers retrieve his medication. Officer Moss asked where the medication was located, and Faler directed him to a backpack in his bedroom. Officer Moss returned to the apartment and retrieved the backpack. Pursuant to police department policy, Officer Moss searched the backpack before placing it in the patrol car to assure that it did not contain anything that could jeopardize officer safety. Officer Moss discovered pictures of Faler "with little boys in compromising positions." Officers then received permission from Parks to search the remainder of the apartment, and officers seized electronic equipment from the room where Faler had been staying. Detective Shawn Hamilton later obtained a search warrant for the backpack and its contents, and he discovered videos and images of Faler sexually abusing children stored on a 16 gigabyte thumb drive retrieved from the backpack.

After the grand jury returned its indictment, Faler moved to suppress

> all evidence seized from his backpack including, but not limited to, all photographs, prints of photographs, information obtained from his laptop, and information obtained from a USB thumb drive, as well as to suppress all statements made by him, and any other evidence derived from the search of Mr. Faler's backpack and his statements.

Mot. to Suppress, ECF No. 43. Faler alleged that the unconstitutional entry into the apartment and his unconstitutional arrest led to statements he made, the discovery of the materials in his backpack, and the issuance of a search warrant for his laptop

computer and thumb drive which resulted in the officers locating the child pornography images.

Crediting the testimony of the officers, the district court found that officers made a verbal request to enter the apartment, and in response, "Parks implicitly consented to the officers' entry by gesturing towards [Faler] and stepping aside as a gesture communicating consent to enter." (Order at 9.) Alternatively, the court held that even if officers' entry into the apartment ran afoul of the Fourth Amendment, seizure of Faler's backpack was sufficiently attenuated from the entry such that the exclusionary rule would not apply. The court held Faler's request that officers retrieve his backpack, after Faler was arrested and was being taken to the patrol car, was a significant intervening circumstance interrupting any taint from an illegal entry into the apartment.

## II.

Faler appeals the denial of his motion to suppress, arguing that the officers' entry into the apartment violated the Fourth Amendment and, as a result, the items seized from his backpack, including the evidence discovered in the execution of the search warrant, should be suppressed as fruit of the poisonous tree. Specifically, Faler argues that "[b]ut for the unconstitutional arrest of Mr. Faler, his backpack would not have been searched incident to that arrest and the printouts would not have been found. But for finding the printouts, Detective Hamilton would not have been able to obtain a warrant to search the backpack, laptop, USB drive and other materials." Appellant's Br. at 25.

When reviewing a district court's suppression determination, we review the court's factual findings for clear error and its legal conclusions de novo. United States v. Johnson, 619 F.3d 910, 917 (8th Cir. 2010). Whether Parks granted consent for the

officers to enter is a question of fact, which we review for clear error. <u>United States v. Jones</u>, 254 F.3d 692, 695 (8th Cir. 2001).

"Absent consent or exigent circumstances, a private home may not be entered to conduct a search or effect an arrest without a warrant." <u>Donovan v. Dewey</u>, 452 U.S. 594, 598 n.6 (1981). Officers may enter the residence if the officers receive voluntary consent to enter from a person possessing authority over the residence. <u>United States v. Lakoskey</u>, 462 F.3d 965, 973 (8th Cir. 2006). "Voluntary consent may be express or implied." <u>Id.</u> In determining whether Parks gave implied consent, "[t]he precise question is not whether [Parks] consented subjectively, but whether his conduct would have caused a reasonable person to believe that he consented." <u>Jones</u>, 254 F.3d at 695.

Faler argues the district court's finding that Parks gave implied consent was clearly erroneous based on his testimony and Parks' statements to the public defender investigator. Also, Faler claims "the more logical conclusion is that the officers immediately went towards Mr. Faler to arrest him, rather than taking the time to ask Mr. Parks if they could enter." Appellant's Br. at 20. The district court did not clearly err in finding Parks gave implied consent to enter the apartment to confront Faler. The court credited the testimony of Officers Noe and Moss that when Faler exited a room in the back of the apartment and came into the officers' view, Parks motioned towards Faler and stepped aside so that the officers could enter the apartment. The district court's credibility determinations are entitled to great deference. <u>See</u> <u>United States v. Gregory</u>, 302 F.3d 805, 811 (8th Cir. 2002). Furthermore, we have held gestures and actions like those made by Parks constituted implied consent in similar encounters. <u>See</u> <u>United States v. Smith</u>, 973 F.2d 1374, 1376 (8th Cir. 1992) (implying consent when the defendant's wife stepped aside and motioned for officers to enter); <u>United States v. Turbyfill</u>, 525 F.2d 57, 59 (8th Cir. 1975) (implying consent when the defendant's wife opened the door and stepped back to let officers enter); <u>see also</u> <u>United States v. Ramirez-Chilel</u>, 289 F.3d 744, 752 (11th Cir. 2002) (implicit

consent to enter trailer found based on testimony that the defendant's body language indicated that he yielded the right of way to the officers). Finally, Faler's "more logical conclusion" argument is conjecture and does not demonstrate clear error on the part of the district court.

## III.

Having determined that the district court did not clearly err in finding the officers' entry into the apartment was gained from Parks' implicit consent, the subsequent seizure of the backpack and discovery of its contents is not fruit of the poisonous tree. Accordingly, we affirm the district court's denial of Faler's motion to suppress.

_____