# THE SUPREME COURT, STATE OF WYOMING

# 2023 WY 127

OCTOBER TERM, A.D. 2023

December 28, 2023

DARRELL LEONARDO ALEXANDER,

Appellant
(Defendant),

v.

S-23-0034

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Laramie County*
*The Honorable Thomas T.C. Campbell, Judge*

*Representing Appellant:*

*Office of the State Public Defender: Diane M. Lozano, State Public Defender; Kirk A. Morgan, Chief Appellate Counsel; Sean H. Barrett, Senior Assistant Appellate Counsel. Argument by Mr. Barrett.*

*Representing Appellee:*

*Bridget L. Hill, Attorney General; Jenny L. Craig, Deputy Attorney General; Kristen R. Jones, Senior Assistant Attorney General; Donovan Burton, Assistant Attorney General. Argument by Mr. Burton.*

*Before FOX, C.J., and KAUTZ, BOOMGAARDEN, GRAY, and FENN, JJ.*

NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**FENN, Justice.**

[¶1]    Darrell Alexander entered a conditional guilty plea to possession of cocaine.  On appeal, he claims the district court erred in denying his motion to suppress evidence law enforcement obtained after they entered his apartment without a warrant or his consent. We affirm.

## ISSUES

[¶2]    Mr. Alexander presents a single issue, which we rephrase as:

> Did the district court err when it denied Mr. Alexander's motion to suppress the evidence against him based on a finding that his girlfriend had apparent authority to consent and gave implied consent for law enforcement to enter Mr. Alexander's apartment?

## FACTS

[¶3]    On March 13, 2022, patrol officers with the Cheyenne Police Department were dispatched to Darrell Alexander's apartment for a report of physical domestic violence. Three patrol officers responded to the call: Officer Cole Tompkins, Officer J. Miles, and Officer Brockton Hayden.  When the officers arrived, they entered the stairwell leading to Mr. Alexander's apartment and found two women sitting on the stairs directly outside of the apartment.  One was the alleged victim, E.B., and the other, an upstairs neighbor, identified herself as "just support."

[¶4]    Officer Miles asked E.B. what happened, and she motioned to an injury on her face and stated Mr. Alexander was intoxicated and kept hitting her.  The officers observed an injury on the left side of E.B.'s face near her eye.  While E.B. was explaining what happened, Officer Hayden pointed to the apartment door and asked if Mr. Alexander was in the apartment.  E.B. responded by opening the door to the apartment and calling Mr. Alexander's name.  E.B. stepped further into the apartment and, while holding the door open, she said to Mr. Alexander, who was lying on the couch, "here you go, the police are here for you."

[¶5]    Officer Miles stepped inside the apartment and positioned himself between Mr. Alexander and E.B.; Officer Hayden asked E.B. to step outside the apartment.  E.B. moved back to the stairwell while Officers Hayden and Miles spoke with Mr. Alexander inside the apartment.  Officer Tompkins questioned E.B. and the neighbor in the stairwell.

[¶6]    Throughout the interview, Mr. Alexander denied any wrongdoing.  At first, he claimed he did not have an argument with E.B., but then later admitted they had argued.

1

Officers observed blood on Mr. Alexander's nose, but when officers questioned Mr. Alexander about the blood he declined to answer. Instead, Mr. Alexander said to the officers "this is my house" and "y'all come into my house [and] try[] to arrest me in my house." When officers asked if Mr. Alexander "live[d] with [his] girl," he responded "no, this is my house. She doesn't live with me." Initially, Mr. Alexander told officers he had not been with E.B., but then stated he and E.B. were hanging out here "for a half an hour." Mr. Alexander told officers that E.B. has been his "girlfriend forever."

[¶7]   Outside the apartment, E.B. and the neighbor gave their version of events to Officer Tompkins. Officer Tompkins learned E.B. and Mr. Alexander were in an on-again off-again relationship for 12 years. He further learned E.B. did not reside at the residence.

[¶8]   The officers arrested Mr. Alexander and transported him to the Laramie County Detention Center. At the detention center, officers found "approximately 39 grams of suspected cocaine-based 'crack' cocaine" and "approximately 26 grams of cocaine" in powder form in Mr. Alexander's underwear. The State charged Mr. Alexander with domestic battery, strangulation of a household member, and two separate counts of possession of a controlled substance for each form of cocaine found in his possession.

[¶9]   Mr. Alexander filed a motion to suppress "any evidence that flowed from" the search and seizure. He argued the officers violated the Fourth Amendment to the United States Constitution and Article 1, Section 4 of the Wyoming Constitution when they entered his apartment without a warrant, his consent, or exigent circumstances. The State argued the officers did not violate Mr. Alexander's constitutional rights because they entered Mr. Alexander's apartment based on E.B.'s apparent authority and her implied consent to their entry when she opened the door to let them speak to Mr. Alexander. The district court denied the motion to suppress. The district court found the officers reasonably believed E.B. had authority to allow them into the residence, based on the facts known to them at the time they entered Mr. Alexander's apartment, and E.B.'s "behavior clearly indicated consent to enter the residence." Mr. Alexander entered a conditional guilty plea to one count of possession of a controlled substance and stipulated to a sentence of 12 to 14 months. The State dismissed the remaining charges. The district court sentenced Mr. Alexander to 12 to 14 months to run concurrent with a separate federal sentence he was serving. Mr. Alexander timely appealed.

## STANDARD OF REVIEW

[¶10]  Mr. Alexander challenges the district court's denial of his motion to suppress under the Fourth Amendment to the United States Constitution and Article 1, § 4 of the Wyoming Constitution.[1]

---

[1] Although Mr. Alexander cited Article 1, Section 4 of the Wyoming Constitution, he did not adequately

2

In reviewing a denial of a motion to suppress evidence, we adopt the district court's factual findings unless those findings are clearly erroneous. We view the evidence in the light most favorable to the district court's decision because the court conducted the hearing and had the opportunity to assess the witnesses' credibility, weigh the evidence and make the necessary inferences, deductions and conclusions. On those issues where the district court has not made specific findings of fact, this Court will uphold the general ruling of the court below if supported by any reasonable view of the evidence. However, the underlying question of whether the search and seizure was constitutional is a question of law, which we review de novo.

*Hawken v. State*, 2022 WY 77, ¶ 12, 511 P.3d 176, 180–81 (Wyo. 2022) (internal citations and quotation marks omitted).

## DISCUSSION

[¶11] Mr. Alexander argues the warrantless entry into his apartment violated the Fourth Amendment. He argues the district court erred "when it found the officers had a reasonable belief [E.B.] had the requisite authority to consent to the . . . warrantless entry into his home[.]" Mr. Alexander also argues E.B. never consented to the officers' entry into his apartment.

[¶12] The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. . . ." U.S. Const. amend. IV. Physical entry into a person's "home is the chief evil against which the wording of the Fourth Amendment is directed." *Hawken*, 2022 WY 77, ¶¶ 14–15, 511 P.3d at 181 (quoting *Lange v. California*, 594 U.S. ——, ——, 141 S. Ct. 2011, 2018, 210 L. Ed. 2d 486 (2021)); (*Fuller v. State*, 2021 WY 36, ¶ 9, 481 P.3d 1131, 1133–34 (Wyo. 2021). "Entry into a home, no matter how limited, constitutes a search." *Id*. at ¶ 15, 511

---

raise or develop the Wyoming constitutional argument below or before this Court. *See Phippen v. State*, 2013 WY 30, ¶ 12, 297 P.3d 104, 108 (Wyo. 2013) (citing *Flood v. State*, 2007 WY 167, ¶ 12, 169 P.3d 538, 543 (Wyo. 2007) ("An appellant does not preserve a Wyoming constitutional argument for appeal by merely citing to the Wyoming Constitution in his motion to suppress without independent supporting analysis of why or how that constitution provides different or more extensive protections.")). Our review of the issue is confined to the Fourth Amendment. *See Woods v. State*, 2023 WY 32, ¶ 14 n.2, 527 P.3d 264, 267 n.2 (Wyo. 2023); *Ramirez v. State*, 2023 WY 70, ¶ 15, 532 P.3d 230, 234 (Wyo. 2023) (quoting *Morgan v. State*, 2004 WY 95, ¶ 20, 95 P.3d 802, 808 (Wyo. 2004)) ("[T]o invoke an independent Wyoming constitutional analysis, 'the appellant must use a precise and analytically sound approach and provide the Court with proper arguments and briefs to ensure the future growth of this important area of law.'").

3

P.3d at 182 (citing *United States v. Jones*, 701 F.3d 1300, 1317 (10th Cir. 2012)). "The [Fourth] Amendment thus 'draws a firm line at the entrance to the house.'" *Id*. at ¶ 14, 511 P.3d at 181 (quoting *Lange*, 594 U.S. at ——, 141 S. Ct. at 2018).

[¶13] "Warrantless searches and seizures are per se unreasonable unless they are justified by probable cause and established exceptions." *Id*. at ¶ 16, 511 P.3d at 182 (quoting *Fuller*, 2021 WY 36, ¶ 9, 481 P.3d at 1134). A search conducted pursuant to a valid consent is a recognized exception to the warrant requirement. *Id*. To prove valid consent, the government must show: "(1) the officers received either express or implied consent and (2) that consent was freely and voluntarily given." *Id*. (quoting *United States v. Guillen*, 995 F.3d 1095, 1103 (10th Cir. 2021), *cert. denied*, 142 S. Ct. 785, 211 L. Ed. 2d 489 (2022)). Mr. Alexander limits his argument to the district court's factual findings regarding the officers' reasonable reliance on E.B.'s apparent authority to give consent and E.B.'s nonverbal gestures sufficiently implying consent. Thus, only the first prong of the consent analysis is at issue. *See generally id*. at ¶ 17, 511 P.3d at 182 (finding the second prong of the consent analysis was not at issue when there was no claim the police coerced a third-party to give consent).

### I. Did the district court err when it found the officers reasonably relied on E.B.'s apparent authority to consent to their entry into Mr. Alexander's apartment?

[¶14] "It has been well established since *Illinois v. Rodriguez*, 497 U.S. 177, 110 S. Ct. 2793, 111 L. Ed. 2d 148 (1990), that no Fourth Amendment violation occurs when police reasonably believe that a person who consents to a warrantless search has authority over the place or thing to be searched." *Lemley v. State*, 2016 WY 65, ¶ 15, 375 P.3d 760, 764–65 (Wyo. 2016). "[T]here is apparent authority to give a valid consent if the facts available to an officer at the time of the search permit an objectively reasonable, even if perhaps erroneous, belief that the consenting party has sufficient interest in or power over the thing to be searched to grant such consent." *Id*. at ¶ 16, 375 P.3d at 765 (citations omitted); *see also Rodriguez*, 497 U.S. at 186, 110 S. Ct. at 2800 (holding the Constitution is not violated "when officers enter without a warrant because they reasonably (though erroneously) believe that the person who consented to their entry is a resident of the premises"). However, "[a]pparent authority does not exist when the police clearly know that the consenting party has no such authority." *Lemley*, ¶ 15, 375 P.3d at 765 (citing 4 Wayne R. LaFave, *Search and Seizure* § 8.3(g) (5th ed. updated Oct. 2015)). The question is whether the facts available to the officers at the time they entered Mr. Alexander's apartment would warrant a man of reasonable caution to believe E.B. had apparent authority over the apartment and consented to that entry. If the answer is yes, then the search is valid. *See Rodriguez*, 497 U.S. at 188–89, 110 S. Ct. at 2801 (citing *Terry v. Ohio*, 392 U.S. 1, 21–22, 88 S. Ct. 1868, 1880, 20 L. Ed.2d 889 (1968)).

[¶15] The district court found the officers reasonably believed E.B. had the authority to consent to their entry into Mr. Alexander's apartment. It found:

[The] responding officers, Officer Tompkins, Officer Hayden and Officer Miles all testified, in some manner, that they believed the alleged victim had the requisite authority to allow officers into the residence. That belief was reasonable. The alleged victim called from that location. The officers received the report of a domestic violence call. The alleged victim was at the residence, immediately reported a crime of violence, had come from inside the apartment and freely reentered the apartment. These facts reasonably indicate to the officers responding to a domestic violence call that the alleged victim had authority to allow officers into the residence.

Mr. Alexander challenges three of the district court's factual findings. He argues the district court clearly erred when it found: (1) E.B. called from Mr. Alexander's residence, (2) E.B. came from inside Mr. Alexander's apartment and freely reentered the apartment, and (3) E.B. immediately reported a crime of violence.

[¶16] We cannot find the district court clearly erred in its factual findings regarding the information available to officers upon their entry into Mr. Alexander's apartment. The officers testified they were dispatched to Mr. Alexander's apartment for a physical domestic dispute. Officer Miles was the first officer to respond to the scene of the reported incident, Mr. Alexander's apartment, followed by Officers Hayden and Tompkins. Officer Miles testified he understood the altercation took place in the living room of Mr. Alexander's apartment, and he was aware Mr. Alexander and E.B. had been in a dating relationship, current or former, which qualified her as a household member.[2] Officer Tompkins testified it was his understanding E.B. called 911 to report the domestic dispute.

[¶17] When the officers arrived at Mr. Alexander's apartment, they found E.B. sitting in the stairwell directly outside of Mr. Alexander's apartment. When Officer Miles first came into contact with E.B., she stood up from where she was sitting outside of Mr. Alexander's apartment and began to open the door to the apartment. Officer Miles distracted E.B. from opening the door and asked her "what's going on tonight." E.B. responded by stating "look" and pointed to a visible injury on her face. E.B. rubbed her face and cried while explaining the incident. She said: "he was drunk, f**ked up, so I was making sure he got home, and I don't have my car because I'm not drinking and driving. My car is at my

---

[2] A peace officer who has probable cause to believe that a domestic assault occurred within the preceding twenty-four hours between persons who are in, or have been in, a dating relationship "may arrest the violator without a warrant for that violation, regardless of whether the violation was committed in the presence of the peace officer." Wyo. Stat. Ann. § 7-20-102(a) (LexisNexis 2021); *see also Woods v. State*, 2023 WY 32, 527 P.3d 264 (Wyo. 2023) (discussing officers still need a warrant or an exception to the warrant requirement under the Fourth Amendment to enter a suspect's home to effectuate an arrest).

5

auntie's. He kept hitting on me, [inaudible] I said yeah I don't have nowhere to go can I have my phone."

[¶18] Officer Hayden pointed to the door of the apartment and asked if the individual who assaulted her was in the apartment. Instead of verbally responding, E.B. grabbed the doorknob, opened the door to the apartment, and stepped inside the apartment. Officer Miles testified he followed E.B. into the apartment because of safety concerns[3] and because he believed E.B. had the authority to allow the officers into the apartment. He stated:

> [Prosecutor:] And why did you take that step into the apartment when you didn't have a warrant?
>
> [Officer Miles:] . . . I believe[d] that [E.B.] had the authority to allow us into that apartment, and then when she stepped in it became exigent. I was concerned for the safety of everybody involved, including officer safety. I had no idea what was in that apartment or who. So I stepped in toward - - I believe there was exigency, and I believe she had the authority to allow us in there.
>
> \*     \*     \*
>
> [Prosecutor:] Okay. Within the first, let's say 60 to 90 seconds of your arrival in the stairwell, you're talking with [E.B.] and the neighbor, and you get some initial information from [E.B.] at that point in time before she opened the door. Whose apartment did you believe you were standing outside of?
>
> [Officer Miles:] I believed it was hers.
>
> [Prosecutor:] Okay. And when she opened the door whose

---

[3] The district court held "[t]he State did not make cogent argument as to exigent circumstances, though the officers testified about the inherent dangers in domestic violence situations, even noting that it was the reason several officers responded." The district court declined to address exigent circumstances because the State did not argue or brief the issue. It held, given its finding on consent, there was no need to analyze whether exigent circumstances existed. Although the State discusses exigent circumstances in its' appellate brief, we decline to address any implications exigent circumstances may have had under the Fourth Amendment analysis because the State did not raise and develop its argument below. *See Borja v. State*, 2023 WY 12, ¶¶ 24–25, 523 P.3d 1212, 1218 (Wyo. 2023); *Harrison v. State*, 2021 WY 40, ¶ 15, 482 P.3d 353, 358 (Wyo. 2021) ("This Court strongly adheres to the rule that it will not address issues that were not properly raised before the district court.") (quoting *Four B Properties, LLC v. Nature Conservancy*, 2020 WY 24, ¶ 69, 458 P.3d 832, 849 (Wyo. 2020)); *Crofts v. State ex rel. Dep't of Game & Fish*, 2016 WY 4, ¶ 24, 367 P.3d 619, 625 (Wyo. 2016) (newly raised constitutional questions do not necessarily compel review).

apartment did you believe it was?

[Officer Miles:] I still believed that she at least had authority to go in there, come and go as she pleased, so I believed it was hers.

[Prosecutor:] And when she walked into the apartment and started yelling or talking, whose apartment did you believe it was at that point in time?

[Officer Miles:] I believed it was still hers.

[Prosecutor:] And when you a few seconds later followed [E.B.] into the apartment whose apartment did you believe it to be?

[Officer Miles:] Hers.

[¶19]   Officer Tompkins testified at the time the officers entered the apartment he "didn't know . . . that [it] was not [E.B.'s] primary residence." He testified he believed the officers could enter the apartment "[d]ue to the fact that they were in a relationship, and that she had access to the building, and opened the door and walked in and allowed officers in. . . ." Officer Hayden testified when he arrived at Mr. Alexander's apartment, another officer asked E.B. where the suspect was, and "she entered the . . . apartment . . . as if she had residency there." He stated E.B. "opened [the door] and straight up walked in." Officer Hayden testified based on E.B.'s demeanor and actions, he believed the apartment was hers.

[¶20]   "[I]t is a vital function of trial courts to make findings of fact based on evidence it believes credible." *Mills v. State*, 2022 WY 156, ¶ 84, 521 P.3d 335, 358 (Wyo. 2022) (quoting *Johnson v. State*, 2009 WY 104, ¶ 22, 214 P.3d 983, 989 (Wyo. 2009)). We will not interfere with the trial court's factual findings if they are supported by a reasonable view of the evidence. *See id.*; *Beckwith v. State*, 2023 WY 39, ¶ 8, 527 P.3d 1270, 1272 (Wyo. 2023); *Byerly v. State*, 2019 WY 130, ¶ 31, 455 P.3d 232, 244 (Wyo. 2019). The district court's findings are supported by a reasonable view of the officers' testimony and E.B.'s statements to the officers upon their immediate arrival to Mr. Alexander's apartment: 1) E.B. called from Mr. Alexander's apartment, 2) she immediately reported a crime of violence, and 3) she had come from inside Mr. Alexander's apartment and freely reentered the apartment. We cannot conclude the district court clearly erred in its factual findings.

[¶21]   Similarly, we agree with the district court's ultimate determination. Given the totality of the circumstances, the officers' reliance on E.B.'s apparent authority to consent

7

to their entry into Mr. Alexander's apartment was reasonable. *See generally Hawken*, 2022 WY 77, ¶ 32, 511 P.3d at 186 (looking at the totality of the circumstances to determine if a reasonable officer would have believed a third-party consented to the entry). Here, E.B.'s actions and the facts known to the officers at the time they entered Mr. Alexander's apartment would "warrant a man of reasonable caution in the belief" that EB lived in or at the very least had authority over the apartment. *See Rodriguez*, 497 U.S. at 188–89, 110 S. Ct. at 2801 (citing *Terry*, 392 U.S. at 21–22, 88 S. Ct. at 1880). As a matter of law, the district court's factual findings establish the officers' reliance on E.B.'s apparent authority to consent to their entry did not violate the Fourth Amendment. *See generally Baker v. State*, 2010 WY 6, ¶¶ 10–13, 223 P.3d 542, 547–48 (Wyo. 2010) (holding officers could reasonably believe a live-in girlfriend had authority to consent to a search because the domestic disturbance was reported from the home and at the hands of her live-in boyfriend, and she unlocked the door with her own key from a personal key chain).

## II. Did the district court err when it found E.B. consented to the officers' entry into Mr. Alexander's apartment based on E.B.'s nonverbal gestures and actions?

[¶22] Mr. Alexander argues the district court erred when it found E.B. consented to their entry into his apartment with her nonverbal gestures. The district court held:

> In the present matter, the officers responded to a call regarding a domestic battery. Upon contact with the alleged victim, she immediately stands up and approaches the door; however, the officers engage her in conversation and temporarily distract her from entrance into the residence. After inquiry on the location of her boyfriend, she immediately enters the residence, walks inside, leaving the door open allowing officers entry behind her. Clearly, the alleged victim's actions were an invitation of entry, not resistance, as the officers had not asked to enter the residence and she responded to their questioning by walking into the home, leaving the door wide open, and continuing to speak inside the residence. Such behavior clearly indicated consent to enter the residence.

[¶23] "Implied consent may be found where a reasonable officer would believe a person consented to entry based on the totality of the circumstances." *Hawken*, 2022 WY 77, ¶ 17, 511 P.3d at 182 (citing *United States v. Castellanos*, 518 F.3d 965, 969–70 (8th Cir. 2008)). Consent must be clear, but it does not need to be verbal. *Id*. (quoting *United States v. Lopez-Carillo*, 536 F. App'x 762, 768 (10th Cir. 2013)). "Consent may . . . be granted through gestures or other indications of acquiescence, so long as they are sufficiently comprehensible to a reasonable officer." *Id*. (quoting *Lopez-Carillo*, 536 F. App'x at 768).

[¶24]   Mr. Alexander relies on our holding in *Hawken*, where we found the State failed to meet its burden of proving the defendant's husband gave implied consent to the officer's entry into his home. *Hawken*, 2022 WY 77, ¶¶ 23–33, 511 P.3d at 184–86.  In *Hawken*, the husband told the trooper he would go get the defendant, and then walked toward the house. *Id*. at ¶ 23, 511 P.3d at 184.  We found a reasonable person would interpret this as a signal to wait for the husband's return. *Id*.  Instead of waiting, the trooper followed the husband and, without being invited, entered into the home's mudroom after the husband opened the door. *Id*.  After the trooper stepped inside, the husband told the trooper to "wait right here" and stated he would be right back. *Id*.  The State's burden is to prove consent by "clear and positive testimony." *Id*.  We found under the specific facts of *Hawken*, the husband's statement to "wait right here" was not implied or express consent but was "more reasonably interpreted as either a rebuke of the trooper's uninvited presence, or at best, acquiescence." *Id*. at ¶ 31, 511 P.3d at 186.  The husband's actions and statements did not allow us to infer implied consent. *Id*. at ¶¶ 17–33, 511 P.3d at 182–86.  We held the entry into the home violated the Fourth Amendment. *Id*.

[¶25]   Mr. Alexander argues the situation here is similar to that in *Hawken* because the officers did not ask E.B. for permission to enter the apartment and E.B. did not expressly invite the officers into the apartment.  Mr. Alexander argues E.B.'s actions were not an invitation for the officers to enter his apartment, and instead he claims E.B. "was simply getting [him] for the officers while they waited outside."  Mr. Alexander claims E.B.'s actions that allowed officers to follow her into the apartment are insufficient to demonstrate implied consent.

[¶26]   The facts in this case are distinguishable from those in *Hawken*.  Here, officers were dispatched to Mr. Alexander's apartment for a report of domestic violence that occurred in the living room of his apartment.  When the officers arrived, they made initial contact with E.B. sitting in the stairwell of the apartment complex directly outside of Mr. Alexander's apartment.  E.B. had a visible injury to her face, so Officer Hayden pointed to the door of the apartment and asked if the individual who assaulted her was in the apartment.  Instead of verbally responding, E.B. grabbed the doorknob, opened the door to the apartment, stepped into the apartment, and confronted Mr. Alexander.  While holding the door open, E.B. said to Mr. Alexander "police are here for you."

[¶27]   In response to E.B.'s conduct, Officer Miles stepped over the threshold of the apartment.  Officers testified they entered the apartment because they believed "[E.B.] was letting [the officers] in the house."  Officer Tompkins testified:

> [Officer Tompkins:] I believe when one of the officers asked where the suspect was or if he was in the apartment, I can't remember which one it was, and she then just opened the door and walked into the apartment without saying anything.

9

[¶28] The facts in this case are more like those found in *United States v. Faler*, where implied consent was found when an apartment resident opened the door wider in response to officers asking where a suspect was located. *United States v. Faler*, 832 F.3d 849, 852–53 (8th Cir. 2016). In *Faler*, the co-tenant testified: "[Officers] knocked on the door. I answered. They asked if I knew [the suspect]. I said, 'yes.' They asked if [the suspect] was [t]here. I said, 'yes,' and started pointing to the room. By that time [the suspect] had come out to meet them." *Id*. at 851. The officers testified that when the suspect exited a room in the apartment and came into their view, the co-tenant motioned towards the suspect and stepped aside so that the officers could enter the apartment. *Id*. at 853. The Eighth Circuit upheld the constitutionality of the officers' entry into the apartment and found the co-tenant's gestures and actions constituted implied consent. *Id*.

[¶29] Similarly, in *United States v. White*, the Tenth Circuit found implied consent when an individual at the scene led officers into the home. *United States v. White*, 508 F. App'x 837, 839–841 (10th Cir. 2013). In *White*, officers were dispatched to a home after a report of a male attempting to commit suicide. *Id*. at 839. When officers arrived, they encountered the male's mother on the front lawn of the home. *Id*. The mother led the officers into the home. *Id*. Upon entry, the officers arrested the male, and he was later indicted on three charges. *Id*. The court found the mother gave implied consent to the officers' entry because she "responded to the officer's question, made at the front door, by 'taking [the officers]'" inside the home. *Id*. at 841. The defendant argued his mother never invited the officers into the home and instead they just came inside. *Id*. The court rejected the argument and found the affirmative action of leading the officers into the home "would lead a reasonable officer responding to a reported suicide attempt in the home to believe that [the mother] consented to entry into the home." *Id*.

[¶30] We have said "[c]ertain gestures by their very nature will provide clear evidence of consent." *Hawken*, 2022 WY 77, ¶ 21, 511 P.3d at 183 (citing *White*, 508 F. App'x at 841). In this case, the district court found E.B.'s conduct—opening the door and leaving it open to allow the officers entry into the apartment after they inquired as to the location of her boyfriend—would lead a reasonable officer to believe she consented to their entry into the apartment. *See White*, 508 F. App'x at 841; *Faler*, 832 F.3d at 853; *United States v. Smith*, 973 F.2d 1374, 1376 (8th Cir. 1992) (finding consent when the defendant's wife stepped aside and motioned for officers to enter); *United States v. Turbyfill*, 525 F.2d 57, 59 (8th Cir. 1975) (finding an implied invitation to enter when a third party opened the door and stepped back). The district court's factual findings of implied consent are supported by the record. Similar to the facts in *Faler* and *White*, when officers asked where the individual that assaulted E.B. was, E.B. led officers into the apartment. E.B.'s nonverbal conduct clearly indicates she invited the officers into the apartment. We affirm the district court's decision and hold the officers' entry into the apartment based on E.B.'s implied consent did not violate the Fourth Amendment. *See Rodriguez*, 497 U.S. at 188–89, 110 S. Ct. at 2801.

# CONCLUSION

[¶31]   The district court did not err in concluding E.B. had apparent authority to consent to the officers' entry into Mr. Alexander's apartment, and she impliedly consented to that entry based on her nonverbal gestures.  The officers did not violate Mr. Alexander's Fourth Amendment rights.  Affirmed.